[No. C060371. Third Dist. Oct. 14, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
JAISEN LEE HENNING, Defendant and Appellant.

COUNSEL

John F. Schuck, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Michael P. Farrell, Assistant Attorney General, David A. Rhodes and Ivan P. Marrs, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**SIMS, J.**—After a marathon session of playing the Grand Theft Auto video game, and while hallucinating under the influence of illicit drugs, defendant Jaisen Lee Henning donned a black ski mask and wielded a sawed-off shotgun in an attempt to rob a randomly chosen business. Fleeing from the scene, Henning led police officers on a high-speed car chase before being apprehended.

A jury convicted defendant of burglary (Pen. Code, § 459),[1] attempted robbery (§§ 211, 664), assault with a firearm (§ 245, subd. (a)(2)), evading a police officer (Veh. Code, § 2800.2, subd. (a)), and possession of a sawed-off shotgun (Pen. Code, § 12020, subd. (a)(1)). On appeal, defendant argues that (1) he should have been allowed to plead not guilty by reason of insanity (NGI) because he committed his crimes while believing he was merely following the goals of the video game he had been playing, (2) his request for a second substitution of appointed counsel should have been granted pursuant to *People v. Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44] (*Marsden*), and (3) CALCRIM No. 220 failed to instruct the jury that each element of the charged offenses required proof beyond a reasonable doubt.

Following precedent of the California Supreme Court, we shall conclude the trial court erred in refusing to allow defendant to exercise his personal statutory right to enter an NGI plea. The trial court further erred in failing to remove defense counsel who refused to allow defendant to enter his NGI plea. However, both of these errors are harmless in light of abundant, uncontradicted evidence in the record demonstrating there was no factual basis for a finding of NGI.

We also reject defendant's frivolous attack on CALCRIM No. 220.

We shall therefore affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY

On the afternoon of July 7, 2007, defendant finished a 10-hour session of playing the video game Grand Theft Auto: San Andreas. Grand Theft Auto engages players in "missions" to commit murder, drive-by shootings, burglary, other violent crimes, and theft. A player learns of missions from other characters in the game.

Defendant was hallucinating while playing Grand Theft Auto. He had been awake for about a week due to his use of crystal methamphetamine. Every

---

[1] Undesignated statutory references are to the Penal Code.

day that week, defendant used some combination of methamphetamine, alcohol, Ecstasy, crack cocaine, and hallucinogenic mushrooms.

As he finished playing the video game, defendant imagined voices from a little green person telling him, "It's time to do this. You can do this. Let's do this." He got into his car and drove to a randomly chosen location.

Shortly before 3:00 p.m., defendant walked into the Rocklin Days Inn lobby wearing a black ski mask and gloves, and carrying a sawed-off shotgun. Vijay Vohra, a Days Inn employee, and Benjamin Salazar, a plumber contracted by Days Inn, were standing behind the counter. Defendant told Salazar to hang up the telephone on which he had been speaking.

Pointing the gun at Vohra, defendant ordered him to open the drawers behind the counter. Defendant then pointed the gun at Salazar, and ordered him to open the drawers. Salazar explained he could not open any drawers because he was a plumber and not an employee of the Days Inn. Vohra hid behind Salazar and stated that he worked for Salazar. Defendant seemed surprised by the responses of Salazar and Vohra, and he stopped to think. After a minute, defendant instructed them to hand over their wallets.

Salazar refused to surrender his wallet, but offered defendant the $2 it contained. Defendant then noticed his car was rolling down the inclined driveway, and ran after it without taking anything.

Placer County Sheriff's Detective Michael Davis was running an errand during his vacation when he happened to drive by the Days Inn. Davis noticed a car blocking the street in front of the Days Inn. He then saw defendant run out of the Days Inn and get into the car, still wearing a mask and holding a shotgun. Davis followed defendant as he sped away. Davis called his dispatcher and described the vehicle and its location. He was unable to relay the license plate number because it had been obscured by duct tape.

Officers in marked police vehicles took over the pursuit. Defendant led the police on a high-speed chase in which he drove erratically through heavy traffic. He was apprehended after the police forced him to turn into a parking lot.

Defendant was taken out of his car and handcuffed. He appeared calm. A search of the car yielded a backpack containing a sawed-off shotgun.

In July 2008, the Placer County District Attorney filed an amended information charging defendant with burglary (§ 459), two counts of attempted robbery (§§ 211, 664), two counts of assault with a firearm (§ 245,

subd. (a)(2)), evading a police officer (Veh. Code, § 2800.2, subd. (a)), and possession of a sawed-off shotgun (Pen. Code, § 12020, subd. (a)(1)). The information further alleged defendant used a firearm in committing the attempted robberies and assaults. (§§ 12022.53, subd. (b), 1203.06, subd. (a)(1).)

Defendant pled not guilty, and the matter was tried to a jury. The jury found defendant guilty on all counts and found true the arming enhancement allegations.

The trial court sentenced defendant to an aggregate prison term of 17 years four months, comprised of two years for attempted robbery, eight months for the second attempted robbery, eight months for evading police officers, a 10-year enhancement for use of a firearm in committing the first attempted robbery, and another three-year four-month enhancement for use of the firearm in the second attempted robbery. Sentences for the burglary, and two counts of assault with a firearm were stayed pursuant to section 654.

Appellant timely filed a notice of appeal.

## DISCUSSION

### I

### Failure to Allow Defendant to Enter an NGI Plea

Defendant contends the trial court erred in disallowing him from entering an NGI plea over the objection of defense counsel. As we shall explain, a defendant has the right to personally enter the plea of his choice regardless of what his counsel thinks of the merits of an NGI plea. Although the trial court erred in failing to allow defendant to enter an NGI plea, we find the error harmless because the record affirmatively demonstrates the lack of credible evidence for an insanity defense.[2]

### A

In January 2008, defendant moved to substitute his appointed attorney pursuant to *Marsden, supra,* 2 Cal.3d 118. One of the grounds for defendant's motion was his dissatisfaction with defense counsel's refusal to allow him to

---

[2] In part II, *post,* we separately consider defendant's contention that we must reverse because his second appointed attorney should have been substituted after his attorney refused to allow him to enter an NGI plea.

enter an NGI plea. At the conclusion of the *Marsden* hearing (heard by Judge Colleen M. Nichols), the court ordered a substitution of counsel.

In July 2008, defendant again made a *Marsden* motion (heard by Judge John L. Cosgrove). Defendant expressed a lack of trust in his attorney as well as displeasure that his attorney was a member of the same law firm as his first appointed counsel. Defendant also stated his wish to enter a plea of NGI. During the hearing, the following colloquy occurred:

"[DEFENSE COUNSEL]: Just to be clear, Your Honor, [defendant] is desirous of entering a plea [of not guilty] by reason of insanity.

"THE COURT: Okay. And so [defense counsel] is not in agreement with your desire to change your plea to what they call—commonly call NGI, not guilty by reason of insanity. Is there anything else that gives you concern about your—either your representation—his representation of you or your ability to work with him—

"THE DEFENDANT: Yes.

"THE COURT:—in your trial?

"THE DEFENDANT: It's just not working out.

"THE COURT: It's not working out. Okay. Can you give me any other facts to support your position?

"THE DEFENDANT: I'm sorry. Can I—I'd like a day with it right now. I can't.

"THE COURT: Okay.

"THE DEFENDANT: But I do believe that he is in agreement. He does not want to go along with my plea.

"THE COURT: Okay. The—I know—is it your position that you were insane at the time of the incident?

"THE DEFENDANT: Yes.

"THE COURT: Or insane at this time or continuing?

"THE DEFENDANT: At the time of the incident.

"THE COURT: Okay."

The trial court invited response from defense counsel, who stated there was "absolutely no basis on which to run an NGI defense." Counsel explained that he obtained three confidential evaluations of defendant by mental health professionals as well as the advice of a substance abuse expert. All four evaluations reached the conclusion that defendant suffered no mental disease or defect supporting an NGI defense. The experts further concluded that, even if defendant had a mental problem, he still had been able to appreciate the wrongfulness of his acts at the time of the attempted robbery. Finally, defense counsel noted that the fourth evaluator opined that defendant was malingering during his psychological testing "in order to appear more crazy than he actually was . . . ."

The trial court found that defendant was receiving "full and complete representation," and denied the *Marsden* motion.

## B

■ In addition to entering a plea of not guilty, a criminal defendant may also enter a plea of NGI. (§ 1017.) "A plea of not guilty by reason of insanity refers to the defendant's mental state at the time of the commission of the crime, a mental state which is distinguishable from that which is required of a defendant before he may be allowed to stand trial." (*People v. Hofferber* (1977) 70 Cal.App.3d 265, 269 [137 Cal.Rptr. 115].) "Insanity, under California law, means that at the time the offense was committed, the defendant was incapable of knowing or understanding the nature of his act or of distinguishing right from wrong. (. . . § 25, subd. (b); *People v. Skinner* (1985) 39 Cal.3d 765, 776–777 [217 Cal.Rptr. 685, 704 P.2d 752] [construing . . . § 25, subd. (a) as providing that defendant may be found insane if he did not know the nature and quality of his act *or* if he did not know the act to be morally wrong].)" (*People v. Hernandez* (2000) 22 Cal.4th 512, 520–521 [93 Cal.Rptr.2d 509, 994 P.2d 354].)

■ When a defendant has entered simultaneous pleas of not guilty and not guilty by reason of insanity, trial must be bifurcated to first ascertain whether defendant committed the charged offenses, and, if so, whether defendant was insane at the time of their commission. Section 1026, subdivision (a), provides, in relevant part: "When a defendant pleads not guilty by reason of insanity, and also joins with it another plea or pleas, the defendant shall first be tried as if only such other plea or pleas had been entered, and in that trial the defendant shall be conclusively presumed to have been sane at the time the offense is alleged to have been committed. If the jury shall find the defendant guilty, or if the defendant pleads only not guilty by reason of

insanity, then the question whether the defendant was sane or insane at the time the offense was committed shall be promptly tried, either before the same jury or before a new jury in the discretion of the court. In that trial, the jury shall return a verdict either that the defendant was sane at the time the offense was committed or was insane at the time the offense was committed. If the verdict or finding is that the defendant was sane at the time the offense was committed, the court shall sentence the defendant as provided by law. If the verdict or finding be that the defendant was insane at the time the offense was committed, the court, unless it shall appear to the court that the sanity of the defendant has been recovered fully, shall direct that the defendant be confined in a state hospital for the care and treatment of the mentally disordered or any other appropriate public or private treatment facility . . . ."

■ Generally, defense counsel has the right to make tactical choices regarding formulation and presentation of a defense at trial. (*People v. Bolden* (1979) 99 Cal.App.3d 375, 379 [160 Cal.Rptr. 268].) However, as the California Supreme Court has explained, "the decision to plead guilty or not guilty ultimately lies with the defendant." (*In re Williams* (1969) 1 Cal.3d 168, 177, fn. 8 [81 Cal.Rptr. 784, 460 P.2d 984].) To this end, section 1018 provides: "Unless otherwise provided by law, every plea shall be entered or withdrawn by the defendant himself or herself in open court."

■ In *People v. Medina* (1990) 51 Cal.3d 870 [274 Cal.Rptr. 849, 799 P.2d 1282] (*Medina*), the California Supreme Court addressed the issue of whether trial courts have discretion to disallow defendants to enter NGI pleas thought to be unwise by defense counsel. (*Id.* at pp. 899–900.) On appeal from conviction and a failed insanity defense, the defendant in *Medina* contended the trial court should have rejected his NGI plea to allow defense counsel to pursue other defenses that had appeared tactically more sound. (*Ibid.*) The high court rejected the contention, holding that the trial court had no discretion to reject defendant's desired plea. As the *Medina* court explained, "[I]f a defendant cannot be compelled by counsel to present an insanity defense, he cannot be compelled by counsel to abandon one merely because counsel disagrees with the tactics of that decision. Thus, contrary to defendant's present premise, the trial court had no discretion to deny defendant's motion to reinstate his insanity plea solely because his counsel opposed that choice on tactical grounds." (*Id.* at p. 900.)

Here, defendant unequivocally requested to enter an NGI plea during both *Marsden* hearings. Both attorneys who represented defendant refused to allow him to enter an NGI plea. As a result, defendant did not receive a trial on the issue of sanity after he was convicted of the charged offenses.

■ The trial court's failure to allow defendant to enter an NGI plea over the objection of defense counsel violated defendant's statutory right under

section 1018 to personally enter the plea of his choice. As the high court has explained, a defendant has the right to enter a plea that " 'may in the final analysis be harmful to his case' " because " 'the right is of such importance that every defendant should have it . . . .' " (*People v. Frierson* (1985) 39 Cal.3d 803, 816 [218 Cal.Rptr. 73, 705 P.2d 396] (*Frierson*), quoting *People v. Robles* (1970) 2 Cal.3d 205, 215 [85 Cal.Rptr. 166, 466 P.2d 710].)

## C

■ Upon finding a violation of a state statutory right, we must assess whether the error resulted in prejudice. (Cal. Const., art. VI, § 13; *People v. Kabonic* (1986) 177 Cal.App.3d 487, 498 [223 Cal.Rptr. 41].) Errors of state statutory law are analyzed pursuant to our Supreme Court's decision in *People v. Watson* (1956) 46 Cal.2d 818 [299 P.2d 243]. (*People v. Epps* (2001) 25 Cal.4th 19, 29 [104 Cal.Rptr.2d 572, 18 P.3d 2].) Under *Watson*, an error warrants reversal only if it "is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*Watson, supra*, at p. 836.)

■ Defendant acknowledges the error complained of here constituted a violation of a state statute: section 1018. Nonetheless, defendant attempts to invoke the more stringent analysis of prejudice applicable to errors of federal constitutional dimension. Violations of federal constitutional rights require reversal unless we can declare the error harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 23–24 [17 L.Ed.2d 705, 87 S.Ct. 824].)

■ Citing *Pennywell v. Rushen* (9th Cir. 1983) 705 F.2d 355, 357, defendant argues that an arbitrary denial of a state-created right may render "trial so 'arbitrary and fundamentally unfair' that it violated federal due process." In *Pennywell*, the record showed the defendant "received full consideration of the facts underlying his insanity claim." (*Id.* at p. 358.) Thus, the Ninth Circuit found no federal due process violation arising out of alleged error in the trial court's entering of an NGI plea on behalf of a defendant who wished to plead only "temporary" insanity. (*Id.* at pp. 357–358.) As in *Pennywell*, defendant in this case received full consideration of the facts regarding his desired insanity defense. Accordingly, the error in this case does not arise to a federal due process violation, and is therefore subject to *Watson* harmless error analysis. Simple errors of state law do not implicate federal due process guarantees. (*Estelle v. McGuire* (1991) 502 U.S. 62, 67 [116 L.Ed.2d 385, 112 S.Ct. 475].)

■ We have found no California Supreme Court decision in which a trial court disallowed a defendant to exercise his or her statutory right to enter an

NGI plea. Nonetheless, we find guidance in the California Supreme Court's decisions in *Medina, supra,* 51 Cal.3d 870, as well as *Frierson, supra,* 39 Cal.3d 803 and its progeny. As we shall explain, *Medina*'s holding that a defendant must be allowed to enter a plea of his or her choice requires an analysis of prejudice consistent with the test for reversible error articulated in *Frierson* and its progeny. The *Frierson* test compels us to conclude that a trial court's failure to allow a defendant to plead NGI is harmless when the record affirmatively shows the insanity defense lacks evidentiary support.

In *Medina, supra,* 51 Cal.3d at page 899, the Supreme Court held that the trial court properly refused to allow the defendant to *withdraw* an NGI plea. Thus, the high court did not have occasion to engage in an analysis of prejudice arising out of an erroneous denial of the right to *enter* an NGI plea. (See *ibid.*) The Supreme Court also did not consider the effect of denying a defendant the right to enter an NGI plea in *In re Williams, supra,* 1 Cal.3d 168. Although the *Williams* court emphasized the right of a defendant to enter the plea of his or her choice, it reversed due to counsel's failure to properly advise defendant of a meritorious defense prior to his guilty plea. (*Id.* at p. 177 & fn. 8.) Thus, *Williams* did not address prejudice arising out of the denial of the right to enter an NGI plea. (*Ibid.*)

In *Frierson, supra,* 39 Cal.3d at page 805, the Supreme Court considered a defendant's insistence on presenting a diminished capacity defense during the guilt phase of a capital trial. Defense counsel believed the better tactic was to withhold evidence until the penalty phase. (*Ibid.*) Thus, the defense offered no witnesses or evidence during the guilt phase. (*Id.* at p. 807.) On automatic appeal, a plurality of the high court held that counsel wrongly refused to present the diminished capacity defense: "Given the magnitude of the consequences that flowed from the decision whether or not to present any defense at the guilt/special circumstance phase, we do not think counsel could properly refuse to honor defendant's clearly expressed desire to present a defense at that stage. Just as a defendant in an ordinary criminal case retains the right to refuse to plead guilty to a lesser offense even if his counsel is convinced that such a plea will lead to a lesser penalty, a defendant in a capital trial must also retain the right to have his only viable defense to the guilt or special circumstance charges presented at the initial stage of the trial." (*Id.* at p. 815, fns. omitted.) Accordingly, the Supreme Court reversed the special circumstance findings and penalty judgment. (*Id.* at p. 805.)

The *Frierson* plurality did not address whether its holding was restricted to capital cases or to cases involving credible evidence of mental impairment. (*Frierson, supra,* 39 Cal.3d at p. 815, fn. 3.) As to the latter issue, *Frierson* noted: "[I]n this case there was evidence to support the diminished capacity defense defendant wished to present. . . . Accordingly, we have no occasion

in this case to determine whether a defendant has a constitutional right to insist on the presentation of a defense which has no credible evidentiary support or on which no competent counsel would rely." (*Id.* at p. 815, fn. 3.)

Subsequent decisions by the California Supreme Court clarified *Frierson*'s holding by explaining that credible evidence *is* required to allow a defendant's desire for a defense based on mental impairment to prevail over counsel's objection to the defense. In *People v. Milner* (1988) 45 Cal.3d 227, 246 [246 Cal.Rptr. 713, 753 P.2d 669] (*Milner*), a unanimous court rejected a defendant's "novel" assertion of prejudice arising out of the prosecution's references to the defendant's reluctance to pursue a diminished capacity defense. The *Milner* court found the defendant's reliance on *Frierson* misplaced, and explained its earlier decision as holding that "a defense counsel's traditional power to control the conduct of a case does not include the authority to withhold the presentation of any defense at the guilt/special circumstance stage of a capital case when the defendant openly expresses a desire to present a defense at that stage *and when there exists credible evidence to support that defense*." (*Id.* at p. 246, italics added.)

Most recently, the high court echoed *Milner* when considering a claim that counsel in a capital case had wrongly failed to keep a defendant informed of the plan to present no evidence until the penalty phase. (*In re Burton* (2006) 40 Cal.4th 205, 215 [52 Cal.Rptr.3d 86, 147 P.3d 1014].) The *Burton* court rejected the argument because a referee found the defendant had been adequately advised of and consented to the trial strategy employed. (*Id.* at pp. 215–216.) The Supreme Court also reiterated that a defendant must unequivocally request a defense having credible evidence in order to compel reluctant counsel to tender a defense during the guilt phase of a capital trial. The *Burton* court stated: "Thus, *Frierson* means that 'a defense counsel's traditional power to control the conduct of a case does not include the authority to withhold the presentation of any defense at the guilt/special circumstance stage of a capital case when the defendant openly expresses a desire to present a defense at that stage and when there exists credible evidence to support that defense.' (*People v. Milner*[, *supra*,] 45 Cal.3d 227, 246 . . . .)" (*Id.* at p. 213.)

■ We see no reason why the test articulated in *Frierson* and its progeny should not apply to noncapital cases in which the trial court fails to heed a defendant's unequivocal request to enter an NGI plea. Although *Medina* holds that defendants must be allowed to avail themselves of their statutory right to plead NGI, *Frierson* and its progeny lead to the conclusion that a trial court's erroneous denial of that right does not warrant reversal if an insanity defense is baseless.

Here, the record affirmatively demonstrates the lack of credible basis for an insanity defense. As we have already explained, an insanity defense requires proof that defendant was incapable of understanding the nature of his actions or unable to distinguish right from wrong. (*People v. Hernandez, supra*, 22 Cal.4th at p. 520; see also § 25, subd. (b).) The defendant bears the burden of proving insanity at the time of the offense by a preponderance of the evidence. (22 Cal.4th at p. 521.)

Defendant cannot rely on the hallucinogenic effects of the drugs he ingested during the week of his crimes because section 25.5 states, "In any criminal proceeding in which a plea of not guilty by reason of insanity is entered, this defense shall not be found by the trier of fact solely on the basis of . . . an addiction to, or abuse of, intoxicating substances." Here, defendant's intoxication due to illicit drugs was the sole basis of his claim of insanity. "[I]f an alcoholic or drug addict attempts to use his problem as an escape hatch, he will find that section 25.5 has shut and bolted the opening." (*People v. Robinson* (1999) 72 Cal.App.4th 421, 427 [84 Cal.Rptr.2d 832].) Thus, defendant's drug abuse offers no support for an insanity defense.

Other than defendant's nonexculpatory use of drugs, the record contains no evidence of mental defect or condition rendering him unable to appreciate the wrongfulness of his conduct at the time of his crimes. The circumstances of defendant's armed offenses and subsequent flight indicate that he understood the wrongful nature of his acts. Defendant wore a black ski mask to avoid recognition, gloves to avoid leaving fingerprints, and placed duct tape over his license plate to preclude identification. Moreover, defendant's attempt to conceal his shotgun inside his backpack while trying to evade the police further indicated he was aware of the wrongfulness of his attempted robbery. Thus, the circumstances show intentional, strategic thinking rather than insanity.

Moreover, defense counsel consulted four independent experts, all of whom concluded defendant was not insane at the time of the offenses. Thus, according to defendant's attorney, defendant was evaluated by Dr. Page Brown and Dr. Deborah Schmidt; both of whom concluded defendant to have been sane at the time of the attempted robbery. Counsel also consulted with a substance abuse expert to ascertain whether defendant's drug usage could lend any support to an insanity defense. Again, counsel was informed that there was no basis for the defense.

Defendant and his father then expressed interest in the services of Dr. Vosconian, who practices in Philadelphia. Defense counsel moved for funds to retain Dr. Vosconian, but the motion was denied due to the expense of hiring an expert to travel cross-country while numerous experts were

available in California. Undeterred, defense counsel sought and received approval to hire Dr. Alex Eufick, who practices in Southern California. Dr. Eufick conducted "extensive psychological testing of [defendant] and review[ed] all the records in the case." However, Dr. Eufick found no basis for an insanity defense. Instead, he concluded that defendant was "intentionally falsifying some of the answers" to appear insane.

The affirmative showing on this record that an insanity defense was baseless distinguishes it from a case relied upon by defendant, *People v. Clemons* (2008) 160 Cal.App.4th 1243 [74 Cal.Rptr.3d 248]. In *Clemons*, the Court of Appeal reversed in a procedurally similar case. There, the trial court denied a request to enter an NGI plea articulated during a *Marsden* hearing. (*Id.* at p. 1251.) As in this case, defense counsel in *Clemons* thought the insanity defense to be unwarranted. (*Id.* at p. 1253.) In *Clemons*, however, the defendant had a history of diagnoses of and hospitalizations for mental illness. (*Ibid.*) Moreover, the crime in that case—possessing an illegal razor blade in prison—was discovered due to a "self-inflicted . . . wound to his arm that was deep enough to require 18 stitches and [he] grinned sheepishly at the sheriff's deputies when they discovered what he had done." (*Ibid.*) Concluding that insanity was not a " 'futile line of defense,' " the *Clemons* court reversed. (*Ibid.*)

As we have recounted in detail, the record in this case shows that an insanity defense would have been futile. Reversal would serve no purpose other than to require the trial court to conduct a sanity trial on a doomed defense.

■ The refusal of the trial court to allow defendant to enter an NGI plea was harmless error. It is not reasonably probable that defendant would have obtained a different result at trial if he had entered an NGI plea. (*People v. Epps, supra*, 25 Cal.4th at p. 29; *People v. Watson, supra*, 46 Cal.2d at p. 836.)

## II

### Denial of Defendant's Second *Marsden* Motion

Defendant contends the trial court abused its discretion in denying him a second substitution of appointed counsel. He argues that he was denied his federal constitutional right to effective assistance of counsel because he lacked "trust or faith" in his attorney and because his attorney refused to allow him to enter an NGI plea. Although defendant failed to show breakdown in the attorney-client relationship, counsel should have been substituted

when the trial court learned of counsel's refusal to allow defendant to enter an NGI plea. Even so, we shall affirm because the record demonstrates the error was harmless.

## A

In *Marsden, supra*, 2 Cal.3d 118, 123–124, the California Supreme Court held that trial courts must give indigent criminal defendants an opportunity to state reasons in support of appointment of new defense counsel. "A defendant 'may be entitled to an order substituting appointed counsel if he shows that, in its absence, his Sixth Amendment right to the assistance of counsel would be denied or substantially impaired.' [Citation.] The law governing a *Marsden* motion 'is well settled. "When a defendant seeks to discharge his appointed counsel and substitute another attorney, and asserts inadequate representation, the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of the attorney's inadequate performance. [Citation.] A defendant is entitled to relief if the record clearly shows that the first appointed attorney is not providing adequate representation [citation] or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result [citations]." [Citations.]' (*People v. Fierro* (1991) 1 Cal.4th 173, 204 [3 Cal.Rptr.2d 426, 821 P.2d 1302].)" (*People v. Memro* (1995) 11 Cal.4th 786, 857 [47 Cal.Rptr.2d 219, 905 P.2d 1305] (*Memro*), first brackets added.) We review the trial court's ruling on the motion for an abuse of discretion. (*People v. Welch* (1999) 20 Cal.4th 701, 728 [85 Cal.Rptr.2d 203, 976 P.2d 754].)

## B

At the second *Marsden* hearing, defendant claimed his newly appointed attorney had a "conflict of interest" because counsel was a member of the same law firm as his first attorney. However, defendant did not articulate any interest adverse to him that counsel may have had. On appeal, defendant still fails to identify any problem with second counsel's employment with the same law firm as his first attorney. Instead, defendant simply reiterates that he had "no trust or faith" in counsel.

Defendant's displeasure with his second appointed attorney did not warrant substitution of counsel. As the California Supreme Court has explained, "To be sure, defendant made plain that he did not like his lawyers and did not think highly of them. That, however, 'was not enough [to show a conflict of interest]. "[I]f a defendant's claimed lack of trust in, or inability to get along with, an appointed attorney were sufficient to compel appointment of substitute counsel, defendants effectively would have a veto power over any

appointment and by a process of elimination could obtain appointment of their preferred attorneys, which is certainly not the law." ' (*People* v. *Berryman* [(1993)] 6 Cal.4th [1048,] 1070 [25 Cal.Rptr.2d 867, 864 P.2d 40].)" (*Memro, supra,* 11 Cal.4th 786, 857.)

We also reject defendant's claim that his attorney improperly argued against him by discussing the lack of evidence supporting an insanity defense. Here, counsel explained the difficulties with an insanity defense in response to defendant's complaints about his inability to enter an NGI plea. As is the usual practice with *Marsden* motions, the trial court heard from defendant and his attorney only after the courtroom has been cleared of all persons except for court personnel and the defense team. (Cf. *People v. Madrid* (1985) 168 Cal.App.3d 14, 18 [213 Cal.Rptr. 813].) The cleared courtroom allowed the trial court to hear from defendant and defense counsel in a manner that preserved attorney-client privileges and avoided revealing tactical decisions to the prosecution.

 In a *Marsden* hearing, defendant's attorney has an obligation to respond when a defendant states seemingly meritorious grounds for a substitution of counsel. (*People v. Hill* (1983) 148 Cal.App.3d 744, 755 [196 Cal.Rptr. 382]; *People v. Munoz* (1974) 41 Cal.App.3d 62, 66 [115 Cal.Rptr. 726].) Here, defense counsel did not act improperly in responding to defendant's complaints about the lack of an insanity defense.

Defendant fails to demonstrate that his lack of trust and faith in his second appointed attorney warranted a substitution of counsel under *Marsden, supra,* 2 Cal.3d 118.

## C

As we explained in part IB, *ante,* defendant had the statutory right to enter an NGI plea over the objection of defense counsel. Even though defense counsel believed an insanity defense to be unfounded, he wrongly refused to allow defendant to enter an NGI plea. (§ 1018; *Medina, supra,* 51 Cal.3d at pp. 899–900.) Upon learning of defense counsel's refusal to allow defendant to exercise his prerogative to enter an NGI plea, the trial court should have substituted new counsel. (*Marsden, supra,* 2 Cal.3d at p. 123.)

 We come again to the question of prejudice. A defendant's federal constitutional right to effective assistance of counsel entitled him to a full defense availing itself of all federal and state protections. (See *In re Avena* (1996) 12 Cal.4th 694, 722–723 [49 Cal.Rptr.2d 413, 909 P.2d 1017] [considering whether defendant's federal constitutional right to effective

assistance of counsel was violated by his attorney's failure to pursue a diminished capacity defense that was later abolished by California statute].)

We conclude that the trial court's failure to substitute counsel was harmless beyond a reasonable doubt. Although defense counsel refused to allow defendant to enter an NGI plea, counsel nonetheless vigorously pursued evidence in support of an insanity plea as we have explained in part IC, *ante*. Despite the efforts, no credible evidence could be mustered for an insanity defense.

 Nothing would be gained by reversing and remanding for further proceedings with new counsel. Defendant has already received a vigorous and thorough attempt by two attorneys to formulate an insanity defense. We will not require defense counsel to mount a defense entirely lacking in credible evidentiary support. (See *People v. Riel* (2000) 22 Cal.4th 1153, 1217 [96 Cal.Rptr.2d 1, 998 P.2d 969] [noting that counsel have an ethical duty to avoid presenting false evidence or perpetrating fraud on the court].)

Declaring the error harmless upon an affirmative showing of lack of credible evidence for an insanity defense avoids the concerns articulated by the *Frierson* plurality in regard to requiring defense counsel to proceed with a defense lacking any support or having ethically problematic evidence. (See *Frierson, supra*, 39 Cal.3d at p. 817, fn. 6.) In this case, for example, the evidence indicated that defendant was malingering during his most recent psychological evaluation. Lacking other evidence, an insanity claim would be more than baseless; it would be fraudulent.

On this record, which documents defense counsel's vigorous efforts to muster evidence for an insanity defense, we are compelled to conclude that defendant was not prejudiced by the trial court's erroneous denial of his motion to substitute counsel. The trial court's error was harmless beyond a reasonable doubt.

## III

### Reasonable Doubt Instruction

Defendant contends CALCRIM No. 220 failed to instruct the jury that he could not be convicted without proof beyond a reasonable doubt of each element of the charged offenses. In so arguing, defendant acknowledges that we rejected this claim (presented by the same appellate counsel) in *People v.*

*Wyatt* (2008) 165 Cal.App.4th 1592 [81 Cal.Rptr.3d 911] (*Wyatt*). Defendant's argument is frivolous.[3]

 In *Wyatt*, we explained, "Under the United States Constitution and California law, the government must prove each element of a charged offense beyond a reasonable doubt. (*Victor v. Nebraska* (1994) 511 U.S. 1, 5 [127 L.Ed.2d 583, 590, 114 S.Ct. 1239]; *People v. Cole* (2004) 33 Cal.4th 1158, 1208 [17 Cal.Rptr.3d 532, 95 P.3d 811]; § 1096.) Whether an instruction correctly conveys this standard must be determined by examining the instruction in the context of all the instructions given the jury. (*Victor v. Nebraska, supra*, 511 U.S. at p. 5; see *People v. Cain* (1995) 10 Cal.4th 1, 36 [40 Cal.Rptr.2d 481, 892 P.2d 1224].) [¶] Under these standards, we see no instructional error. In giving CALCRIM No. 220, the trial court told the jury: 'Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt.' The jury also received [instruction on each charged offense]. Each instruction states, 'To prove that the defendant is guilty of this crime, the People must prove that:' and then lists the separate elements of the offense. In addition, the jury received CALCRIM No. 361, which concerns the evaluation of a defendant's failure, if any, to explain or deny adverse evidence against him, and states: 'The People must still prove each element of the crime beyond a reasonable doubt.' Accordingly, CALCRIM No. 220, viewed together with other instructions, correctly informed the jury that the prosecutor was obliged to prove each element of the crimes beyond a reasonable doubt." (*Wyatt, supra*, 165 Cal.App.4th at p. 1601.)

Although defendant purports to articulate reasons why "*Wyatt* was wrongly decided and should be reconsidered," he fails to offer any analysis of our prior decision. Indeed, he fails to offer analysis of any authority more recent than a case decided by the California Supreme Court four years prior to our decision in *Wyatt*.

 Defendant asks us to reconsider our holding in *Wyatt*, but articulates no grounds for doing so. A good faith argument for overruling a recent decision without intervening Supreme Court authority or legislative change requires more than a recycled argument. Our message to appellate counsel is the same one we gave counsel the last time we encountered repetitive attacks on the reasonable doubt instruction: "The time has come for appellate attorneys to take this frivolous contention off their menus." (*People v. Hearon* (1999) 72 Cal.App.4th 1285, 1287 [85 Cal.Rptr.2d 424].)

Discerning no error in CALCRIM No. 220, we reject defendant's challenge to the instruction.

---

[3] This means the taxpayers will not have to pay appellate counsel for having made this argument.

## DISPOSITION

The judgment is affirmed.

Blease, Acting P. J., and Robie, J., concurred.

On October 27, 2009, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied January 13, 2010, S177696. Kennard, J., and Werdegar, J., were of the opinion that the petition should be granted.