Filed 4/10/13  Adoption of X.Z. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| Adoption of X.Z., a minor. | |
| D.T., | |
| Petitioner and Respondent, | C072109 |
| v. | (Super. Ct. No. FL363663 ) |
| D.Z., | |
| Objector and Appellant. | |

D.Z., father of the minor, appeals from a judgment declaring the minor free from the custody and control of his natural father.  (Fam. Code, § 7860 et seq.)  Father contends (1) the trial court erred in failing to appoint counsel for, and interview, the minor and (2) substantial evidence did not support the trial court's finding he abandoned the minor within the meaning of Family Code section 7822.  We conclude any error in failing to interview the minor or not appointing counsel for the minor was harmless.  We reject father's substantial evidence contention.  There was ample evidence supporting the trial court's finding that father abandoned the minor.  Accordingly, we affirm the judgment.

1

In December 2009, stepfather filed an adoption request. The request alleged father had abandoned the 10-year-old minor because there had been no contact from father in more than a year. Probation Officer Harmon, while investigating the matter in January 2010, contacted father who was in jail. Father refused to consent to adoption and said he was due to be released soon. Harmon told father to contact the family court if he wanted visitation.

Harmon's stepparent adoption report stated mother lost contact with father when the minor was about three years old. Prior to that time the parents had an informal visitation agreement, which the mother ended when father threatened to take the minor to Mexico. Shortly thereafter, father and another person tried to break into mother's home. At that time, mother got a restraining order against father and also filed for custody and child support orders. Father did not attend these hearings but did appear at a hearing on visitation initiated by the paternal grandmother. Visitation was denied and mother said father made no further effort to contact the minor.

In April 2011, a petition to free the minor from father's custody was filed. The petition alleged father left the minor without provision for support and had not contacted the minor from August 2001 to the present.

In March 2011, father was sent letters regarding consent to adopt and again declined to consent. Father called Harmon and said he went to family court but the filing fees were too expensive. Harmon gave father information about the adoption petition process but had no further contact from him.

Harmon's report stated the minor was living with his mother and stepfather. When interviewed, the minor was fully aware of the adoption petition and expressed interest in being adopted soon. He wanted to change his last name because he did not like his current last name. He did not want to have to see father or go with him. When asked if there was anything the minor would like to tell the judge, the minor stated, "It's

so important so he [father] can't take me anymore." The report discussed the family and residence of mother and stepfather who were married in 2007. Harmon believed the stepfather was suitable to adopt the minor and the best interests of the minor would be served if the adoption petition were granted.

A social worker from the San Joaquin County Human Services Agency (Agency) prepared an evaluation and report pursuant to Family Code section 7850. The report described the minor as a generally healthy child who was developing normally, doing well in school, and had no behavioral problems. Mother and stepfather had provided a stable nurturing family for the minor. The stepfather wanted legal status as the minor's father in the event anything happened to mother, and the name change for the minor would make him clearly a part of the family.

The social worker's report also set forth the facts supporting the allegations of father's abandonment. Mother lived with father for several years until his drug use caused her to ask him to leave in 2001, when the minor was about two years old. They had an informal visitation agreement but father did not visit as scheduled. Father did not appear at a court hearing regarding visitation and mother was awarded full custody of the minor. Although ordered to do so, father never paid child support and never called or sent cards or gifts to the minor for birthdays or holidays. After father and his friends tried to break into her home, mother got a restraining order, which was lifted in 2003. Father was in and out of custody over the intervening years and was in custody in 2009 when the stepfather tried to adopt the minor. Father was unwilling to give consent at that time. Mother and stepfather decided to wait on the adoption to see if father would try to establish a relationship with the minor. Father made no attempt to do so.

The social worker explained to the minor what adoption would mean to him and he said he understood. The minor told the social worker he really wanted to be adopted, and would then have the same last name as the rest of his family. He was clear that his stepfather was a good "dad" and they enjoyed a positive relationship. The minor said he

3

did not know father and would not recognize him if he saw him. The minor was somewhat bothered that father did not want to contact him or know him and said he did not "want a father that doesn't want me." The minor was informed of his right to be present at the hearing but stated he did not care either way. The minor did not attend the hearing.

The social worker concluded Family Code section 7822, subdivision (a), applied and the facts demonstrated that father abandoned the minor. The social worker felt adoption would "positively impact the minor's emotional well being" and would be in his best interests. The Agency recommended termination of father's parental rights with adoption by the stepfather.

At the hearing, mother testified the court ordered child support in 2003 but she received no support from father thereafter. She then filed for custody and restraining orders. Mother stated father had no contact with the minor since the minor was about three and he is now 12. Mother testified she did not try to keep her address secret from father. Father did try to get her address and telephone number through her brother about three years ago, but mother did not provide it. Mother testified that the minor goes to the same school as father's nephews but their parents did not tell her father was asking for contact information for her. She had not had contact with father's family since the paternal grandmother took her to court seeking visitation with the minor. Within the last year, father did tell a friend of hers he bought a bike for the minor.

Father testified it was difficult to contact the minor because he did not know where mother lived. He did not try to approach her because of a restraining order and his family was "stonewalled" when they tried to get information. Father testified he was in prison when mother filed for custody. He did leave a note for mother's brother asking the brother to contact him and continuously tried over the years through family to contact mother and the minor. Father said he had been in custody about 26 months during the last six years and about 48 months in the last nine years. Father said Harmon contacted

him about adoption of the minor when he was in jail in 2009 and he told Harmon he objected to it. When released in May 2010, he tried to contact Harmon and also went to family court to pursue the matter, but the fees were more than he could afford and he did not understand the pro per packet so he waited until the current proceedings. Father testified he initially paid some support. Father stated he had no intent to abandon the minor.

The stepfather testified he met the minor in 2003. They developed a relationship over the years. He provides support and guidance to the minor and loves him very much. He never met or had conversations with father. The stepfather asked the trial court to consider a statement prepared by the minor. The court declined to do so because the parties had not agreed the statement could be considered, but noted the minor's statements were in the report.

In July 2012, the trial court issued a written decision finding abandonment by father and declaring the minor free from the custody and control of father.

The court found mother's testimony "very credible" in that father made no attempts to provide for or contact the minor. Mother said father's family did not attempt to contact her although the minor and father's nephews went to the same school. Mother acknowledged an attempt by father three years earlier to get her telephone number but father did not say his attempt related to the minor. That was father's only attempt. Father did not exercise his visitation with the minor under the early informal agreement, he failed to provide support when ordered to do so, and he sent no cards or letters to the minor.

The court also found stepfather's testimony that he was the only father the minor knew and he had never seen or heard from father to be credible. The court noted the minor's statement that "he would not recognize his natural father if he bumped into him on the street." The court found the evidence established the presumption of abandonment.

Assuming father's few efforts to contact the minor over the last nine years really happened, the court found father's efforts were not even token efforts. The court further found father's incarceration did not impede his ability to contact the minor since the majority of the time he was not in custody and could have made serious efforts to find the minor. The court noted father presented no proof of support payments or testimony from relatives or other witnesses about attempts to contact mother.

In conclusion, the court found that failure to provide support for the minor for over a year coupled with failure to communicate with the minor for that period established by clear and convincing evidence father had the intent to abandon the minor. The court declared the minor free from the custody and control of father.

DISCUSSION

I

*Minor's Interests*

Father contends the trial court erred in failing to consider whether the minor's interests required the appointment of counsel and interview the minor prior to making that decision.

A.

*Appointment of Counsel*

In a proceeding to declare a minor free from the custody of a parent, "[t]he court shall consider whether the interests of the child require the appointment of counsel. If the court finds that the interests of the child require representation by counsel, the court shall appoint counsel to represent the child, whether or not the child is able to afford counsel." (Fam. Code, § 7861.)

The statute does not require the court to indicate on the record whether the interests of the minor do or do not require appointment of counsel. In the absence of any evidence to the contrary, we may presume the court performed the required task of

6

considering the minor's interests and determining counsel was not required. (Evid. Code, § 664.)

Even assuming the court did fail to consider the interests of the child, reversal is not required. When the claimed error is a violation of a statutory duty, an appellant must show prejudice. (*In re Melinda J.* (1991) 234 Cal.App.3d 1413, 1419 [failure to comply with statutory notice]; *People v. Henning* (2009) 178 Cal.App.4th 388, 398 [failure to allow defendant to enter the plea of his choice].) Here, father argues there was prejudice because the minor's counsel might have sought visitation between father and the minor and the minor's interests would have been protected. We are not persuaded.

Failure to appoint counsel for a minor in a freedom from custody case does not require reversal in the absence of a miscarriage of justice. (*In re E.* (1978) 21 Cal.3d 349, 355.) The question in appointing counsel for a minor is whether the minor has separate interests not otherwise protected in the contest between mother, stepfather, and father. (*Id.* at p. 354.) Based on the testimony and the information in the reports, it was clear the minor's interests aligned with those of mother and stepfather and could be protected by them. Based on the record, there was no miscarriage of justice in not appointing counsel for the minor.

**B.**

***Interview with the Minor***

"[T]he court shall consider the wishes of the child, bearing in mind the age of the child and shall act in the best interest of the child." (Fam. Code, § 7890.) "[I]f the child who is the subject of the petition is 10 years of age or older, the child shall be heard by the court in chambers" on the child's feelings and thoughts about the proceeding, the parents, and custody preference. (Fam. Code, § 7891.) Further, the court shall inform the child of the child's right to attend the hearing. (Fam. Code, § 7890.) However, "[t]he

child shall not be present in court unless the child so requests or the court so orders." (Fam. Code, § 7861.)[1]

Although the legislative preference is clear, there is no absolute requirement that a minor always be interviewed by the court. (*In re Jack H.* (1980) 106 Cal.App.3d 257, 269.) Here, the minor had been interviewed by the probation officer and the social worker. His position on adoption and his feelings about father were clear and consistent over time. An additional interview by the court would not have revealed new or different information. We conclude any error in failing to interview the minor was harmless.

Father relies on *Neuman v. Melgar* (2004) 121 Cal.App.4th 152, which found reversible error in a freedom from custody case where the court did not receive the evaluator's report in evidence, interview the minor, or consider whether to appoint counsel for the minor. (*Id.* at pp. 168-171.) The *Neuman* case is factually distinguishable. Here, the court admitted into evidence two evaluation reports, both of which contained similar information on the minor's thoughts and feelings about the adoption and his parents. Also, the minor's interests were aligned with mother and stepfather and could be protected by them. Based on the record, we conclude any error in failing to interview the minor or not appointing counsel for the minor was harmless.

## II

### *Substantial Evidence*

Father contends substantial evidence does not support the trial court's finding that he intended to abandon the minor.

---

[1] We note there is a requirement that a citation issue commanding the custodial parent to bring the minor to court. (Fam. Code, § 7880.) No such citation issued and the court did not issue any other order for the minor to appear. The minor did not express any interest in appearing and was not present at the hearing.

8

When the sufficiency of the evidence to support a finding or order is challenged on appeal, even where the standard of proof in the trial court is clear and convincing, the reviewing court must determine if there is any substantial evidence -- that is, evidence that is reasonable, credible, and of solid value -- to support the conclusion of the trier of fact. (*In re Angelia P.* (1981) 28 Cal.3d 908, 924; *In re Jason L.* (1990) 222 Cal.App.3d 1206, 1214.) In making this determination we recognize all conflicts are to be resolved in favor of the prevailing party and issues of fact and credibility are questions for the trier of fact. (*In re Jason L.*, *supra*, 222 Cal.App.3d at p. 1214; *In re Steve W.* (1990) 217 Cal.App.3d 10, 16.) The reviewing court may not reweigh the evidence when assessing the sufficiency of the evidence. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.)

A proceeding to free a child from the custody and control of a parent may be brought when the child has been left by one parent "in the care and custody of the other parent for a period of one year without any provision for the child's support, or without communication from the parent, with the intent on the part of the parent to abandon the child." (Fam. Code, § 7822, subd. (a)(3).) "The failure . . . to provide support or failure to communicate is presumptive evidence of the intent to abandon. If the parent [has] made only token efforts to support or communicate with the child, the court may declare the child abandoned by the parent." (Fam. Code, § 7822, subd. (b).)

There was ample evidence supporting the trial court's decision. After father was asked to leave mother's residence, he did not contact or provide support for the minor. Assuming father actually made the efforts to contact or support the minor about which he testified, those efforts were, at best, token efforts and inadequate to rebut the presumption of abandonment established by the credible evidence in the reports and mother's testimony. Father was not hampered in his efforts by his time in custody since he was out of custody for the majority of the minor's life. Even after father was aware of the adoption request and petition to free the minor from father's custody and control, he did

9

not make any significant efforts to create or develop a parental role in the minor's life. The trial court resolved conflicts in the evidence adversely to father. We may not reweigh the evidence to reach a different conclusion.

DISPOSITION

The judgment is affirmed.


                                                     HOCH_____, J.


We concur:


____RAYE_____, P. J.


____HULL_____, J.

10