Filed 4/11/13  P. v. Hola CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C069643 |
| Plaintiff and Respondent, | (Super. Ct. No. 09F00267) |
| v. | |
| REGINALD HOLA, | |
| Defendant and Appellant. | |

Defendant Reginald Hola entered a negotiated plea of no contest to receiving stolen property, attempted second degree robbery and two counts of second degree robbery, and admitted a principal was armed with a firearm.  He entered his plea in exchange for a stipulated state prison sentence and dismissal of the remaining counts with a waiver pursuant to *People v. Harvey* (1979) 25 Cal.3d 754 for purposes of restitution only.

After entering his plea, defendant sought substitute counsel pursuant to *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*) on three occasions (May 28, July 9, and

1

Dec. 21, 2010) and each time his request was denied.  Defendant also sought to withdraw his plea (July 9, 2010) and that motion was denied as well.  On January 14, 2011, the court expressed a doubt as to defendant's competency.  After an evaluation by a doctor and referral to CONREP[1] for placement, defendant was committed to Napa State Hospital on April 15, 2011, for no more than three years.  Six months later, the court found defendant competent.  On November 4, 2011, defendant again sought substitution of counsel.  After denying defendant's *Marsden* motion, the court sentenced defendant to state prison.

Defendant appeals.  His request for a certificate of probable cause (Pen. Code, § 1237.5) was granted.  He contends that during the *Marsden* hearing on December 21, 2010, his attorney created a conflict of interest by her statements and that she should have been immediately relieved.  He argues the trial court's error in failing to replace his attorney requires reversal and remand.  We disagree and shall affirm the judgment.

### FACTUAL BACKGROUND

On December 27, 2008, defendant and two others, one of whom was armed with a shotgun, entered a Game Stop store on Calvine Road.  Two victims were inside the store. One victim gave the robbers the money out of the cash register.  The same day, defendant and two others, one of whom was armed with a sawed-off shotgun, entered the Game Stop store on Bruceville Road and committed a robbery.  Five victims were inside the store.  Another robbery of the Game Stop store on Calvine Road occurred in January 2009 and the suspects fled with money containing an electronic tracking device, leading to their arrest.  One of these suspects identified defendant as having been involved in the

---

[1] CONREP refers to the state Department of Mental Health's Forensic Conditional Release Program.  The goal of CONREP is to ensure greater public protection in California communities via an effective and standardized community outpatient treatment system.  (<http://www.dmh.ca.gov/services_and_programs/forensic_services/conrep/default.asp> [as of Apr. 11, 2013].)

other robberies.  A search of defendant's home revealed several video games and clothing worn in the robberies.

## PROCEDURAL BACKGROUND

### *December 21, 2010 Hearing and Related Proceedings*

On December 21, 2010, defendant personally filed a written motion to relieve counsel "due to inadequate representation."  Defendant declared that there were conflicts between him and his attorney and he would "provide the necessary evidence to support" his claim at the hearing scheduled for the same date.  He claimed that due to counsel's inadequate representation, he had suffered prejudice "such as to justify dismissal of charges currently pending, or in the alternative, enjoy the substitution of counsel."  He stated that counsel had failed and/or refused "to confer with [him] concerning the preparation of [his] defense;  [¶] . . . to communicate with [him];  [¶] . . . [to] subpoena witnesses favorable to [his] defense and deprived [him] of the testimony critical to the defense;  [¶] . . . to perform and/or to have performed investigation(s) critical and necessary to the defense;  [and]  [¶] . . . to prepare and file motion(s) critical to the defense."  He attached points and authorities in support of his motion, indicating that the trial court was required to inquire on the record.

At the closed *Marsden* hearing on December 21, 2010, defendant personally confirmed on the record that he was making a motion to relieve counsel and understood that what was said at the hearing was in confidence.  When the court inquired as to defendant's specific reasons, defendant responded, "Can't work with her."  When asked why, defendant remained silent for "well over a minute."  When the court inquired again, defendant did not respond.

The court then turned to counsel and asked how long she had represented defendant.  Counsel responded that she had represented defendant for almost two years.  When the court asked whether she had met with defendant several times, counsel

3

responded "numerous times" and then recounted the procedural history of the case, noting the preliminary hearing, the plea agreement, the prior *Marsden* motions, defendant's motion to withdraw his plea, which was presented by an attorney appointed for that purpose only (that attorney found no basis for a motion to withdraw plea), counsel's declaration of doubt as to defendant's competency, and the court's appointment of Dr. Schaffer (who opined defendant was competent and possibly malingering), Dr. Roof (who opined defendant was incompetent), and Dr. Nakagawa (who opined that defendant was competent and malingering). Counsel stated that she had set the matter for a hearing on defendant's competency and had met with defendant several times during which he seemed very normal.

Counsel then provided the following information to the court. When she advised defendant a few days before the December *Marsden* hearing that she had given the other doctor's reports to Dr. Roof who then changed his opinion and concluded defendant was, more likely than not, malingering, defendant "became very upset and said that he felt that [she] was working against him, that [she] took the only doctor who was on his side and turned that doctor against him by showing him the reports of the other doctor[s]." She explained to defendant that Dr. Roof would be asked about the other reports and their tests when he testified. Defendant had asked counsel to determine how long he had met with the other doctors, telling counsel that he had met with Dr. Schaffer for only five or six minutes and with Dr. Nakagawa for only 30 minutes. Counsel learned that Dr. Schaffer had met with defendant for three and one-half hours. She contacted "C.C.D." but it was unable to locate the information in order to determine how long defendant had met with Dr. Nakagawa.

Counsel also stated that defendant had given her the names of three inmates. When she asked what those inmates would testify to, he asked her "what did they need to

testify to." Counsel "explained to [defendant] that [she] could not assist him in trying to present some kind of fraud to the Court as to his mental condition."

The court asked defendant to respond. Defendant reiterated that he "can't work with her" and added that when he started to talk, she would yell at him. When the court inquired as to what defendant meant, defendant stated "I try to speak out, tell her my opinion or whatever, and she—she—she gets up yelling. And you know, I just cut it off right there. That's it. Can't do it no more."

The court determined that counsel would remain as defendant's attorney and denied his motion. The court then stated, "I don't know whether you're malingering or whether you are in fact incompetent. [¶] But the point is is that [counsel] has your best interests at heart. I know her. I have worked with her. She has been an attorney in my court over several years. And she is an effective advocate for defendants, as good as they come in this county. [¶] And because you decide you can't work with her is not good enough reason. I've asked you to be specific and you can't give me one example." Defendant claimed that he had been specific, that is, she had yelled at him. The court commented, "I have tried to talk to you. You can't talk to me." Then the court stated, "You know, I'm tempted to—to have another [Penal Code section] 1368 [hearing] but it doesn't make sense. I've got three doctors' reports."

Counsel then added the following: "[Defendant] during one of our visits asked me if we were on the same page. And he basically indicated to me, and this was on one of our last visits, either the one on December 2nd or December 10th, that when I asked what he meant by the same page, he explained that his plan, since he has been convicted of multiple strikes, is to establish that he suffers from a severe mental illness. [¶] So that in the future if something were to happen, that he would be able to show that he suffers from mental illness and hopefully would somehow avoid a sentence of 25 to life if he committed a crime in the future. [¶] I explained to him that that—that that kind of—of

5

conversation—that I could not be part of. And that I would do what—what I needed to do as far as where we were, but I could not assist him in trying to commit a fraud upon the Court." She also stated that she had met with defendant numerous times, each meeting would be lengthy, and that there had not been yelling.

When counsel started to talk about a particular meeting with defendant, the court asked counsel to be succinct. She stated that on December 17th, defendant got "extremely angry" when given the "letters," said he was finished and would not listen to her. The court inquired whether she had failed to file any motions as defendant had complained in his written motion and counsel denied it.

The court turned to defendant and asked him about his written motion to substitute counsel wherein he stated that counsel had failed or refused to file motions critical to his defense. The court asked, "What motions are you talking about?" Defendant responded, "my friend hand me that" and that the court was "supposed to know what's that's for." The court then denied the *Marsden* motion.

Upon reconvening in open court, the court inquired whether the matter of defendant's competency was submitted on the reports and both parties agreed. The court found defendant competent and continued sentencing to January 14, 2011.

At sentencing on January 14, 2011, defendant appeared not to understand the proceedings. The judge declared a doubt as to defendant's competency, suspended proceedings, and appointed a doctor to evaluate defendant. In March 2011, upon the return of Dr. Newman's report finding defendant not competent, counsel stated that the issue of defendant's competence "did not arise until after the time period of the plea" and that she "did not see any evidence prior to that of that issue." She also noted that "sometimes when someone is in custody they can, um, decompensate, and I think that that is what has happened here." The court found defendant not competent and referred him to CONREP.

6

Defendant subsequently spent several months at a state hospital and was returned to court on August 2, 2011. The hospital diagnosed defendant as malingering and certified that defendant was competent.

On August 17, 2011, after meeting with defendant for "over an hour," counsel had "some concerns about his competency level despite the report" and requested a hearing. On October 20, 2011, both parties submitted on the hospital's report and the court found defendant competent, reinstated criminal proceedings and continued the matter to November 4, 2011, for Judge Kenny to sentence defendant.

### *November 4, 2011 Hearing*

At sentencing, defendant claimed he did not understand the proceedings and again sought substitution of counsel pursuant to *Marsden*. At the closed hearing, the court inquired as to why defendant did not want counsel as his attorney. Defendant claimed that she had called him a "liar." When asked why she had called defendant a liar, defendant responded, "She said it, you know." When asked when she said it, defendant claimed, "Last time we went to court" and then explained it occurred before he went to the hospital. Defendant also complained that counsel was "working with the D.A." and against him. When asked to be more specific, defendant claimed everything she did was inappropriate in that they had meetings and were finding a way to "turn everything against [him]." Defendant claimed counsel was "telling people" including the judge presiding at the hearing that defendant was a "liar." Defendant explained that a man in "a suit" whose name defendant did not know told defendant that counsel had told the judge that defendant was a liar. The judge denied it.

Counsel claimed that she had done everything that she could professionally do to help defendant, including having Dr. Newman review the state hospital's competency report. After testing defendant, Dr. Newman opined that even though defendant probably had some kind of psychological or psychiatric issue, defendant was malingering.

7

Counsel denied calling defendant a liar but admitted that during a prior *Marsden* hearing, she had indicated to the court that defendant "was being disingenuous in some of the things he was saying to the Court." Counsel denied secretly meeting with the prosecutor and claimed the meetings were normal, professional discussions about the case.

Upon the court's inquiry, defendant had nothing further to add. The court denied the *Marsden* motion. Upon reconvening, the court sentenced defendant to state prison for eight years four months.

## DISCUSSION

### I. Defendant's Contentions

Defendant contends that during the *Marsden* hearing in December 2010, his attorney's "gratuitous statements effectively accusing [him] of trying to perpetrate a fraud on the court and, potentially, commit crimes constituted a violation of her ethical duty to [him]" and "created a conflict of interest between her and [him] such that she should have been immediately relieved as [his] trial attorney." Defendant contends the trial court's error in failing to replace his attorney once she disclosed confidential information requires reversal, remand, restoration of the status quo as of December 2010, and reevaluation of his competency.[2] Defendant also contends that the court erroneously denied his *Marsden* motion in November 2011. We conclude that defendant has failed to demonstrate error and even assuming error, it was not prejudicial.

---

[2] Defendant states that he does not contend that his complaints at the *Marsden* hearing about his attorney's performance justified granting the motion.

Defendant claims counsel violated California State Bar Rules of Professional Conduct, rule 3-100[3] and Business and Professions Code section 6068, subdivision (e)(1)[4] and created a conflict of interest.  He argues counsel had alternatives such as

---

[3] State Bar Rules of Professional Conduct, rule 3-100 provides:

"(A)  A member shall not reveal information protected from disclosure by Business and Professions Code section 6068, subdivision (e)(1) without the informed consent of the client, or as provided in paragraph (B) of this rule.

"(B)  A member may, but is not required to, reveal confidential information relating to the representation of a client to the extent that the member reasonably believes the disclosure is necessary to prevent a criminal act that the member reasonably believes is likely to result in death of, or substantial bodily harm to, an individual.

"(C)  Before revealing confidential information to prevent a criminal act as provided in paragraph (B), a member shall, if reasonable under the circumstances:

"(1)  make a good faith effort to persuade the client:  (i) not to commit or to continue the criminal act or (ii) to pursue a course of conduct that will prevent the threatened death or substantial bodily harm; or do both (i) and (ii); and

"(2)  inform the client, at an appropriate time, of the member's ability or decision to reveal information as provided in paragraph (B).

"(D)  In revealing confidential information as provided in paragraph (B), the member's disclosure must be no more than is necessary to prevent the criminal act, given the information known to the member at the time of the disclosure.

"(E)  A member who does not reveal information permitted by paragraph (B) does not violate this rule."

Under comments to this rule, other exceptions are discussed:  "[13]  . . . *Rule 3-100 is not intended to augment, diminish, or preclude reliance upon, any other exceptions* to the duty to preserve the confidentiality of client information recognized under California law." (State Bar Rules of Prof. Conduct, com. foll. rule 3-100, ¶ 13, p. 16, italics added.)

Rule 5-200 of the California Rules of Professional Conduct provides, in relevant part, as follows:  "In presenting a matter to a tribunal, a member:  [¶]  (A)  Shall employ, for the purpose of maintaining the causes confided to the member such means only as are consistent with truth; [¶]  (B)  Shall not seek to mislead the judge, judicial officer, or jury by an artifice or false statement of fact or law."

[4] Business and Professions Code section 6068 provides, in relevant part, as follows:  "It is the duty of an attorney to do all of the following:  [¶] . . . [¶]  (e)(1)  To maintain

9

refusing to assist him in his plan, and that counsel certainly "does not tell the court." He claims his complaints at the December 2010 *Marsden* hearing were vague in that he said nothing and counsel's comments were not in response to direct questioning by the court. He argues the circumstances here are distinguishable from those in *People v. Cox* (1991) 53 Cal.3d 618 (*Cox*) (disapproved on other points in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22 (*Doolin*)), *People v. McKinnon* (2011) 52 Cal.4th 610, 637-644, and *People v. Hartsch* (2010) 49 Cal.4th 472, 512-513. He claims counsel "should have been guided by the principles found in *Nix v. Whiteside* (1986) 475 U.S. 157 [89 L.Ed.2d 123] [(*Whiteside*)]." Citing *People v. Bolton* (2008) 166 Cal.App.4th 343, 357-358 (*Bolton*), defendant argues that counsel "has no obligation and, in fact, is not permitted to disclose the perjury but, instead, is simply obligated not to directly facilitate the perjury." Defendant claims that counsel's gratuitous disclosure of confidential information amounted to acting against defendant.[5]

The People respond that counsel did not violate her ethical duties, claiming that "defendant accused defense counsel of working against him and sharing the doctors' reports with the only doctor that believed he was mentally incompetent" and that counsel was defending herself by providing full disclosure as required by *Marsden*. Citing *People v. Henning* (2009) 178 Cal.App.4th 388 (*Henning*), the People argue that clearing

---

inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client."

Subdivision (d) of section 6068 of the Business and Professions Code provides that it is an attorney's duty "[t]o employ, for the purpose of maintaining the causes confided to him or her those means only as are consistent with truth, and never to seek to mislead the judge or any judicial officer by an artifice or false statement of fact or law."

[5] In his opening brief, defendant did not raise an issue about or state how counsel created a conflict at the November 2011 hearing. In his reply brief, he argues his complaint at the November hearing that counsel called him a liar did not require a response from counsel because the judge knew that counsel had made no such statement to the judge.

the courtroom allowed defendant and counsel to "speak freely, without the concern of violating the attorney-client privilege." The People argue that *Whiteside* and *Bolton* are distinguishable in that neither case discussed the issue of a *Marsden* hearing. With respect to prejudice, the People claim that a substitute counsel would not provide anything that counsel did not provide.

Defendant replies that the People have mischaracterized the hearing in that he never accused counsel of anything at the hearing but instead remained silent when asked to explain his complaints.

We conclude the trial court did not err in refusing to relieve counsel.

## II. Analysis

"A criminal defendant is guaranteed the right to the assistance of counsel by the Sixth Amendment to the United States Constitution and article I, section 15 of the California Constitution. This constitutional right includes the correlative right to representation free from any conflict of interest that undermines counsel's loyalty to his or her client. [Citations.] 'It has long been held that under both Constitutions, a defendant is deprived of his or her constitutional right to the assistance of counsel in certain circumstances when, despite the physical presence of a defense attorney at trial, that attorney labored under a conflict of interest that compromised his or her loyalty to the defendant.' [Citation.] 'As a general proposition, such conflicts "embrace all situations in which an attorney's loyalty to, or efforts on behalf of, a client are threatened by his responsibilities to another client or a third person or his own interests." ' " (*Doolin*, *supra*, 45 Cal.4th at p. 417; *Cox*, *supra*, 53 Cal.3d at p. 653.)

"In *Mickens v. Taylor* (2002) 535 U.S. 162 [152 L.Ed.2d 291] (*Mickens*), the high court confirmed that claims of Sixth Amendment violation based on conflicts of interest are a category of ineffective assistance of counsel claims that, under *Strickland* [*v.*

11

*Washington* (1984) 466 U.S. 668, 688 [80 L.Ed.2d 674]], generally require a defendant to show (1) counsel's deficient performance, and (2) a reasonable probability that, absent counsel's deficiencies, the result of the proceeding would have been different. [Citations.] In the context of a conflict of interest claim, deficient performance is demonstrated by a showing that defense counsel labored under an actual conflict of interest '*that affected counsel's performance*—as opposed to a mere theoretical division of loyalties.' [Citations.] '[I]nquiry into actual conflict [does not require] something separate and apart from adverse effect.' [Citation.] 'An "actual conflict," for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance.' " (*Doolin*, *supra*, 45 Cal.4th at pp. 417-418.)

"[A] determination of whether counsel's performance was 'adversely affected' under the federal standard 'requires an inquiry into whether counsel "pulled his punches," i.e., whether counsel failed to represent defendant as vigorously as he might have, had there been no conflict. [Citation.] In undertaking such an inquiry, we are . . . bound by the record." (*Doolin*, *supra*, 45 Cal.4th at p. 418.) *Doolin* "adopt[ed] the federal constitutional standard for evaluating claims of conflict of interest under our state Constitution." (*Id.* at p. 419.) Other than multiple concurrent representation where a presumption of prejudice may apply to conflicts of interest, defendant must demonstrate outcome-determinative prejudice. (*Id.* at pp. 418, 420-422.)

"[T]he Sixth Amendment does not require any particular response by counsel to a problem that may arise. Rather, the Sixth Amendment inquiry is into whether the attorney's conduct was 'reasonably effective.' To counteract the natural tendency to fault an unsuccessful defense, a court reviewing a claim of ineffective assistance must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' [Citation.] In giving shape to the perimeters of this range of reasonable professional assistance, *Strickland* mandates that '[prevailing] norms of

12

practice as reflected in American Bar Association Standards and the like, . . . are guides to determining what is reasonable, but they are only guides.' [Citation.] *Under the Strickland standard, breach of an ethical standard does not necessarily make out a denial of the Sixth Amendment guarantee of assistance of counsel.*" (*Whiteside*, *supra*, 475 U.S. at p. 165 [89 L.Ed.2d at pp. 133-134], italics added.)

"In resolving claims of ineffective assistance, we must 'assess counsel's overall performance throughout the case' [citation], evaluating it 'from counsel's perspective at the time of the alleged error and in light of all the circumstances.' " (*Cox*, *supra*, 53 Cal.3d at p. 661.)

Here, the alleged conflict arose during a hearing on defendant's *Marsden* motion. A brief discussion of the practice with *Marsden* motions is thus warranted. "A trial judge is unable to intelligently deal with a defendant's request for substitution of attorneys unless he is cognizant of the grounds which prompted the request. The defendant may have knowledge of conduct and events relevant to the diligence and competence of his attorney which are not apparent to the trial judge from observations within the four corners of the courtroom. Indeed, '[w]hen inadequate representation is alleged, the critical factual inquiry ordinarily relates to matters outside the trial record: whether the defendant had a defense which was not presented; whether trial counsel consulted sufficiently with the accused, and adequately investigated the facts and the law; whether the omissions charged to trial counsel resulted from inadequate preparation rather than from unwise choice of trial tactics and strategy.' [Citation.] Thus, a judge who denies a motion for substitution of attorneys solely on the basis of his courtroom observations, despite a defendant's offer to relate specific instances of misconduct, abuses the exercise of his discretion to determine the competency of the attorney. A judicial decision made without giving a party an opportunity to present argument or evidence in support of his contention 'is lacking in all the attributes of a judicial determination.' " (*Marsden*, *supra*,

13

2 Cal.3d at pp. 123-124.) *Marsden* held it was error to deny the defendant the opportunity to explain the basis for his claim and found the error in that case prejudicial because the court could not "conclude beyond a reasonable doubt that this denial of the effective assistance of counsel did not contribute to the defendant's conviction." (*Marsden*, *supra*, 2 Cal.3d at p. 126.)

"Once a defendant is afforded an opportunity to state his or her reasons for seeking to discharge an appointed attorney, the decision whether or not to grant a motion for substitution of counsel lies within the discretion of the trial judge." (*People v. Clark* (2011) 52 Cal.4th 856, 912.)

Here, defendant personally filed a written motion to substitute counsel prior to the *Marsden* hearing. Both parties fail to discuss defendant's written motion. He had written complaints about counsel's failure and/or refusal to do many things, including "to confer with [him] concerning the preparation of [his] defense; [¶] . . . to communicate with [him]; [¶] . . . to subpoena witnesses favorable to the defense and deprived [him] of the testimony critical to [his] defense; [¶] . . . to perform and/or to have performed investigation(s) critical and necessary to the defense; [and] [¶] . . . to prepare and file motion(s) critical to the defense." He stated that he would have the evidentiary proof at the hearing.

At the hearing, when the court asked for specifics, defendant provided none. The court turned to counsel to respond. Counsel could only respond to defendant's general written complaints. Defendant filed the written *Marsden* motion just days after a conversation between defendant and counsel during which counsel explained that she had given the reports of the doctors who found defendant competent to the doctor who found him incompetent. Because defendant became extremely angry, counsel could reasonably assume at the *Marsden* hearing that that was the specific complaint that defendant really had.

14

Even if there was a specific complaint about counsel giving the unfavorable reports to the only favorable doctor, defendant argues that counsel should have just explained her tactical reason for doing so and there was no reason to disclose any additional information. Even when defendant specifically complained that counsel yelled at him, defendant claims counsel should have responded by denying the same or explaining the reason for doing so. Defendant asks that this court "make it clear" that counsel must limit disclosures of confidential information to that which is necessary to respond to a defendant's specific complaints and to direct questioning by the court. Defendant states that "[i]f a defendant wants a new attorney, trial counsel should not go out of her way to block that request." We reject defendant's arguments.

"As is the usual practice with *Marsden* motions, the trial court heard from defendant and his attorney only after the courtroom ha[d] been cleared of all persons except for court personnel and the defense team. [Citation.] The cleared courtroom allowed the trial court to hear from defendant and defense counsel in a manner that preserved attorney-client privileges and avoided revealing tactical decisions to the prosecution." (*Henning*, *supra*, 178 Cal.App.4th at p. 404.)[6]

Defendant claims *Henning* is distinguishable because the defendant in that case had specific complaints. Again, defendant failed to discuss let alone acknowledge his written motion to substitute counsel wherein he listed several complaints. Counsel explained her actions in response to defendant's complaints and did not create a conflict.

---

[6] Here, the *Marsden* motion occurred just prior to the hearing on defendant's competency upon which the judge was the fact finder. Any suggestion that counsel's disclosures prejudiced defendant with respect to the competency finding is easily rejected. "During most trials, judges hear numerous motions and argument in chambers dealing with prior convictions, the voluntariness of confessions, the admissibility of evidence, and other procedural matters, without permitting such proceedings to jaundice their views on ultimate conclusions." (*Marsden, supra,* 2 Cal.3d at p. 125.)

Counsel divulged no privileged communications until she was required to do so in response to defendant's complaints about her performance at the *Marsden* hearing. (*Henning*, *supra*, 178 Cal.App.4th at p. 404.) Notably, defendant never disputed counsel's representations to the court about defendant's plans. Any conflict was of defendant's own making. Defendant has cited no authority to support a claim that he has a right to require that counsel keep confidential his plan to feign mental incompetence or that he has a right to insist that counsel assist him in obtaining perjured testimony from fellow inmates or in presenting false evidence. Instead, the law is quite the opposite.

" '[A]n attorney owes no duty to offer on his client's behalf testimony which is untrue.' [Citations.] Stated slightly differently, an attorney, including a criminal defense attorney, has a 'special duty . . . to prevent and disclose frauds upon the court . . . .' " (*People v. Riel* (2000) 22 Cal.4th 1153, 1217 (*Riel*), citing *Whiteside*, *supra*, 475 U.S. at pp. 168-169 [89 L.Ed.2d 123].) "A ' "lawyer should not conclude that testimony is *or will be false* unless there is a firm factual basis for doing so. Such a basis exists *when* facts known to the lawyer or *the client's own statements indicate to the lawyer that the testimony or other evidence is false*." ' " (*Riel*, *supra*, 22 Cal.4th at p. 1217, italics added.)

In *Whiteside,* the attorney dissuaded the defendant from testifying falsely by threatening: to reveal to the court that his story was perjured, to withdraw from representation, and to impeach the defendant. The defendant testified and gave a story that the attorney did not believe was perjured. *Whiteside* held the attorney did not render ineffective assistance by threatening to disclose the defendant's plan to testify falsely, reasoning that the defendant had no right to testify falsely. (*Whiteside*, *supra*, 475 U.S. at pp. 161-162, 171-173 [89 L.Ed.2d at pp. 130-131, 137-139].) "An attorney's duty of confidentiality, which totally covers the client's admission of guilt, does not extend to a client's announced plans to engage in future criminal conduct." (*Id*. at p. 174

16

[89 L.Ed.2d at p. 139].)  Here, defendant announced to counsel his plan to feign mental incompetence, a fraudulent claim.  (*Henning*, *supra*, 178 Cal.App.4th at p. 405.)

In *Riel*, *supra*, 22 Cal.4th 1153, the defendant entered a plea of guilty and later moved for a new trial on the ground of newly discovered evidence, that is, information from a potential witness that would be favorable to the defense.  The defense had not obtained the witness's declaration by the time of the hearing on the new trial motion.  Both defense attorneys stated they had a conflict with respect to the witness that could not be discussed in open court or in the presence of the prosecutor.  At an in camera hearing absent the prosecutor, a defense attorney explained that the witness had made various statements about the case but stated that he would give a very favorable statement which would be a lie.  The defense attorneys were not interested in producing perjured testimony and the witness then indicated that the favorable statement might not be a lie.  The defense attorneys explained to the court that they were not willing to produce potentially perjured testimony but did not reveal the witness's specific statements.  In open court, the court denied the new trial motion.  (*Riel*, at pp. 1215-1216.)  On appeal, the defendant claimed counsel rendered ineffective assistance in failing to present the evidence.  (*Id.* at p. 1216.)  Noting that the defense attorneys were "intentionally vague," *Riel* rejected the claim, "hypothesiz[ing] on this record that [the witness] may have said something that fully justified their actions."  (*Id.* at p. 1217.)  "*Although attorneys may not present evidence they know to be false or assist in perpetrating known frauds on the court*, they may ethically present evidence that they suspect, but do not personally know, is false.  Criminal defense attorneys sometimes have to present evidence that is incredible and that, not being naive, they might personally disbelieve.  Presenting incredible evidence may raise difficult tactical decisions—if counsel finds evidence incredible, the fact finder may also—but, as *long as counsel has no specific undisclosed factual knowledge of its falsity, it does not raise an ethical problem*."  (*Ibid.,* italics added.)  *Riel*

17

held that there was "no basis to find that counsel acted other than as diligent advocates consistent with ethical constraints." (*Id.* at p. 1218.)  Here, defendant disclosed to counsel his plan to falsely claim mental incompetence and wanted her assistance in obtaining false statements of other inmates.  Counsel could not ethically present evidence to assist defendant in perpetrating a fraud on the court.

In *Cox*, *supra*, 53 Cal.3d 618, defense counsel revealed during an in camera hearing that based on his investigation, there was a " 'possibility that there may be an escape attempt in this case.' " (*Cox* at p. 653.)  On appeal, the defendant claimed that the trial court should have "pursued this revelation to assure he was represented by 'conflict free' counsel or obtained his express waiver of such representation." (*Ibid.*)  *Cox* determined that the trial court was not required to inquire further or obtain a waiver of conflict, distinguishing cases involving dual representation.  (*Id.* at p.654.)  *Cox* also noted, "Parenthetically, we also observe that the American Bar Association Code of Professional Responsibility permits an attorney to reveal '[t]he intention of his client to commit a crime and the information necessary to prevent the crime.'  (DR 4-101(C)(3); see also ABA Model Rules Prof. Conduct, rule 1.6(b)(1) [attorney may reveal confidential information 'to prevent the client from committing a criminal act . . . likely to result in imminent death or substantial bodily harm']; cf. Evid. Code, § 956 [*no attorney-client privilege 'if the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit a crime* [*or a fraud*]']; see generally *Matter of Shay* (1911) 160 Cal. 399, 406; *Falloon v. Superior Court* (1926) 79 Cal.App. 149, 157-158.)[7]  The Model Rules of Professional Conduct also admonish against knowingly

---

[7] " 'The lawyer's duty is of a double character.  He owes to his client the duty of fidelity, but he also owes the duty of good faith and honorable dealing to the judicial tribunals before whom he practices his profession.  He is an officer of the court—a minister in the temple of justice.  His high vocation is to correctly inform the court upon the law and the

18

'fail[ing] to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client . . . .' (ABA Model Code Prof. Conduct, rule 3.3(a)(2).) Under most circumstances, this obligation would include alerting the court to matters that might threaten the security of the proceedings." (*Cox, supra*, 53 Cal.3d at pp. 654-655, italics added.) Here, defendant sought the assistance of counsel to commit a fraud on the court; no attorney-client privilege applied.

Citing *Bolton*, *supra*, 166 Cal.App.4th 343, defendant argues that counsel was not obligated and in fact was prohibited from disclosing defendant's "alleged intent to commit misconduct." Defendant's reliance upon *Bolton* is misplaced. In *Bolton,* based on defense counsel's *belief* that the defendant would perjure himself on the witness stand, defense counsel sought to be relieved as counsel several days before the final date for trial. The trial court relieved defense counsel based on an alleged conflict of interest and required the defendant to choose between his right to counsel and his right to a speedy trial. (*Bolton*, *supra*, 166 Cal.App.4th at pp. 350, 356.) The defendant decided to represent himself rather than waive his speedy trial right. (*Id.* at pp. 349-350.) Finding that there was no legitimate conflict of interest, *Bolton* reversed, concluding that the defendant's waiver of his right to counsel was not voluntary. (*Id.* at pp. 358-361.)

*Bolton* is distinguishable. A defendant has the fundamental right to testify, notwithstanding counsel's wishes. (*People v. Nakahara* (2003) 30 Cal.4th 705, 717.) Here, defendant had already entered a negotiated plea of no contest to several offenses. Defendant's fundamental right to testify was not at issue. Further, "it was not at all clear that Bolton was in fact going to perjure himself. While Cline [Bolton's counsel] may have doubted Bolton's claim that one of the victims had a razor blade, Cline did not *know* that this was false. In addition, Cline had only a hunch that Bolton was 'hiding' his

---

facts of the case, and to aid it in doing justice and arriving at correct conclusions.' " (*Falloon*, *supra*, 79 Cal.App. at pp. 157-158.)

girlfriend from Cline. Further, Bolton was not given an opportunity to respond to Cline's claims before the court determined that a conflict existed and agreed to relieve Cline." (*Bolton*, *supra*, 166 Cal.App.4th at p. 357.) *Bolton* also determined that requesting to be relieved was not proper, concluding that counsel "should have utilized the narrative approach if he was concerned about the veracity of Bolton's testimony." (*Id.* at p. 358.) Here, at the *Marsden* hearing, counsel represented that defendant had told her of his plan to feign mental incompetence and he did not dispute her representations at the *Marsden* hearing. Counsel's performance was not deficient and the trial court did not err in refusing to relieve her.

In any event, defendant has failed to demonstrate prejudice. The most recent medical report from the state hospital after defendant's commitment for several months indicated that defendant was malingering. Counsel delivered that report to Dr. Newman who reviewed the report, conducted testing on defendant and concluded that defendant was malingering even though he may have some kind of psychological or psychiatric issue. Defendant argues the error was not harmless because the *Marsden* hearing predated litigation of his competency, suggesting another attorney would have found "stronger or better evidence" to support an incompetence determination. Defendant's suggestion that other doctors could have been retained who would have provided a more favorable opinion is sheer speculation. Because the trial court erred in appointing an attorney for the sole purpose of evaluating defendant's motion to withdraw his plea (*People v. Sanchez* (2011) 53 Cal.4th 80), defendant argues that attorney may have based her evaluation on the assumption defendant was competent. *Sanchez* "specifically disapprove[d] of the procedure . . . , namely, the appointment of a substitute or 'conflict' attorney solely to evaluate whether a criminal defendant has a legal ground on which to move to withdraw the plea on the basis of the current counsel's incompetence."

20

(*Sanchez*, at p. 90.)  Nonetheless, defendant's suggestion about the attorney's assumption concerning his competency is based on pure speculation.

## DISPOSITION

The judgment is affirmed.


        BUTZ        , Acting P.  J.


We concur:


        MAURO        , J.


        MURRAY        , J.