[No. B190535. Second Dist., Div. Eight. Mar. 12, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
DONALD CLEMONS, Defendant and Appellant.

COUNSEL

Michael John Shultz, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Robert F. Katz and Robert C. Schneider, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**FLIER, J.**—Appellant Donald Clemons was sentenced to eight years in prison for custodial possession of a manufactured weapon (Pen. Code, § 4502, subd. (a)), with one prior strike conviction and two prior convictions under Penal Code section 667.5, subdivision (b).[1] He contends: (1) At several points in the proceedings, there were inadequate inquiries about his desire to substitute counsel under *People v. Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44] (*Marsden*). (2) He received ineffective assistance from his trial counsel. (3) The jury was inadequately instructed at the hearing on his prior convictions.

We requested and received supplemental briefing on whether the trial court committed reversible error when it failed to allow appellant to enter a plea of not guilty by reason of insanity (NGI), when appellant unequivocally expressed his desire to do so, even though his counsel was opposed to entry of that plea. We answer that question in the affirmative, and therefore reverse.

## FACTS

On July 9, 2003, while in custody on another case, appellant met with his counsel in a locked attorney-inmate interview room at the courthouse. He was separated from counsel by wire mesh. After the meeting, he held out his right arm to two deputy sheriffs. The inside of his forearm was bleeding heavily from a four- to five-inch laceration that was deep enough to make "bundles of muscle" visible. His demeanor was like a child caught "in the cookie jar with cookie crumbs on his mouth . . . ."

---

[1] Subsequent code references are to the Penal Code unless otherwise stated.

The deputies called paramedics and gave appellant paper towels to press against the wound. They repeatedly asked him what he had used to cut himself. He finally spat out the razor blade portion of a disposable razor. The blade must have come from one of the razors that jail inmates are given for personal hygiene. All inmates are instructed that it is a crime to alter their personal hygiene items. The laceration required 18 stitches. Appellant's arms were scarred from similar wounds, both parallel to and perpendicular to the new wound.

In addition to the foregoing testimony from the sheriff's deputies, the evidence included stipulations by counsel, including: (1) Appellant was in custody within the meaning of section 4502, subdivision (a), and was under the care of an official penal institution. (2) He was the person named in the information and was defense counsel's client. (3) He was originally arrested "on the burglary case" on November 8, 2000, and thereafter, "for various periods of time . . . was in the care of Patton State Hospital as opposed to the L.A. County jail system due to competency proceedings." (4) He had "been previously diagnosed with certain mental conditions for which he's received treatment; however, that mental condition does not rise to the level of insanity, and at this time he has been declared competent to stand trial. [¶] There has been some evidence that Mr. Clemons may have been malingering, to some extent, the complete nature of his mental condition, though this is not conclusive. [¶] Malinger means to pretend or to fake."

## PROCEDURAL HISTORY

On January 29, 2003, appellant returned from Patton State Hospital and was found competent to stand trial.

On March 21, 2003, an information was filed in case No. VA062434, and the court declared a doubt about appellant's competency to stand trial. The information alleged that on November 8, 2000, appellant committed one count of first degree residential burglary and one count of receiving stolen property. It also alleged three prior strike convictions, one prior conviction pursuant to section 667.5, subdivision (b), and three prior convictions pursuant to section 667, subdivision (a)(1).

We will refer to case No. VA062434 as the burglary case.

On June 11, 2003, appellant was found competent to stand trial, and he pled not guilty in the burglary case.

On July 9, 2003, the razor blade incident occurred after appellant met with his counsel about the burglary case.

On September 2, 2003, an information was filed in case No. VA077849, which we will call the razor blade case. That information alleged that appellant violated section 4502, subdivision (a), by carrying a razor blade while confined in a penal institution. It also alleged three prior felony convictions that qualified as strikes, and four prior prison convictions that qualified under section 667.5, subdivision (b).

On September 3, 2003, as to both the razor blade and burglary cases, the public defender's office and the office of the alternate public defender declared a conflict of interest.

On September 9, 2003, a bar panel attorney was appointed to represent appellant on both cases, and appellant pled not guilty in the razor blade case. That attorney continued to represent appellant on both cases, throughout the rest of the proceedings below.

On October 3, 2003, the court declared a doubt about appellant's competency to stand trial.

After numerous continuances, appellant was found mentally competent to stand trial on June 24, 2004. The court relied on reports from two experts, Drs. Kaushal K. Sharma and Michael J. Perrotti. Both of those doctors indicated that appellant was feigning symptoms to make it appear that he was not competent to stand trial.

On August 20, 2004, appellant appeared with counsel for trial on both of the cases. The hearing officer was Commissioner Michael L. Schuur, in department SEM of the southeast division. Counsel was not prepared for trial on the razor blade case, as he had just received the police reports. He told the court that appellant was "feeling better," wanted to make a *Marsden* motion, and had "the wherewithal" to know how to do that.

After the prosecutor left the courtroom, Commissioner Schuur asked appellant what he wanted to say about counsel's representation. Appellant said that he wanted another lawyer because he did not trust his counsel, who talked negatively to him and did not "have the best of [his] interests." Based on that explanation, Commissioner Schuur denied the *Marsden* motion. The trial was continued to September 20 to provide time for preparation.

On September 16, 2004, the court filed a typewritten letter from appellant in propria persona, addressed to the "Presiding Judge of Norwalk Superior Court." The letter stated: "I am writing to ask that you override the decision of the commissioner in my case not to change my current public defender. It is only recently that the Public Defender has done any thing on my case and [he] has often told me that he will do as little as possible. He refuses to take into account any of my legitimate mental health issues, changes in medications, and their effects. It is imperative that this happen or a change of Venu[e] to another court in the event that this Judge continues to harbor undue prejudice."

Judge Peter Espinoza, in southeast department SEF, rejected appellant's request with a minute order that stated, in pertinent part: "The court is disinclined to intervene in the decision of another bench officer and without authority to do so, denies the motion for reconsideration."

On September 20, 2004, appellant's counsel filed a section 1538.5 motion in the burglary case based on an illegal detention. That motion and trial of the burglary case thereafter trailed the trial of the razor blade case.

On September 30, 2004, appellant refused to stipulate to Commissioner Schuur for the trial of either case. The matters were transferred to Judge Larry S. Knupp in department S. After discussing preliminary matters with counsel, Judge Knupp told appellant that he was wearing jail clothes, and had a right to be tried in civilian clothes. Appellant responded, "I'm not guilty by reason of insanity." He said he did not want to hear anything else and wanted a different lawyer because his lawyer was not making an effort for him. He refused to sit down and vociferously asked to leave the courtroom. Defense counsel asked appellant if he wanted the judge to hear a *Marsden* motion, so that another lawyer would be appointed. Appellant answered, "No. I'm fine. I know how to do this." The judge said he had not heard a specific request for a *Marsden* motion. Appellant said, "I want out of here." The court noted that appellant did not want to be present and was "very belligerent."

After a discussion off the record, the judge said that appellant was currently "downstairs in the main tank" on the first floor, refusing to come out. There was a risk of injury if the bailiffs struggled with appellant to bring him to the courtroom on the sixth floor. As it was late in the day, the judge decided to swear in the jury panel, in appellant's absence, and continue with the trial the next morning. Counsel concurred, and that course was taken. After the jury left, the proceedings resumed in front of appellant's cell, in the lockup on the first floor. Judge Knupp specifically asked appellant if he wanted to make a motion to relieve counsel and have new counsel appointed. He reminded appellant that the People had made an offer of 14 years.

Appellant responded that he had been trying for almost two years to plead NGI and no one would listen to him. The judge told appellant that it was up to defense counsel whether to raise the issue of insanity. The judge also observed that appellant was "not insane." He asked appellant if he wanted to be present for the trial the next day. Appellant refused to answer.

The next day, October 1, 2004, appellant repeatedly told the bailiff that he would not leave the lockup. Judge Knupp found that, based on appellant's actions the previous day and his statements to the bailiff on October 1, he had voluntarily absented himself from trial and would be extremely disruptive if he were present.

Defense counsel then stated for the record why he was not raising an NGI defense, as he anticipated the case would be reviewed by an appellate court. He said, "It is—based on my own observations regarding Mr. Clemons, those observations alone have brought me to the conclusion that he is not insane. There is no evidence, not even any credible evidence that he is insane. [¶] My observations were confirmed by my discussions with Dr. Perrotti, who reviewed him, who[m] I have a close relationship with; also concurs in my opinion. [¶] Dr. Sharma, who[m] I did not talk to, also concurs in my opinion [in his report]. [¶] It is my opinion that the defendant is malingering, and I have not found any evidence at least at this stage that at the time of the commission of the offense my client was not guilty by reason of insanity. That is why I have not brought forth that defense despite the protestations to the contrary."

The prosecutor pointed out that appellant's *Marsden* motion before Commissioner Schuur showed that appellant had knowledge of the system, as did appellant's consistent and articulate ability to explain why he wanted to plead NGI. Moreover, appellant's words and demeanor in court were consistent with malingering and an above normal level of intelligence. Defense counsel added that appellant wrote articulate letters to Judge Espinoza and other judges. He believed that appellant was not insane, but was malingering. In his opinion, presentation of an NGI defense would prejudice appellant by exposing the jury to the fact that he was malingering.

The jury was brought in at that point. It was told that appellant was not present "by his own choice." The trial proceeded throughout the day. The court verified after the lunch recess that appellant still did not want to be in the courtroom. When the trial resumed the next day, appellant chose to be in the courtroom. He was present for the arguments of counsel, the verdict, and the trial on the prior felony convictions. The jury found him guilty on all charges, and found the prior convictions to be true.

Sentencing on the razor blade case was thereafter continued many times.

On August 29, 2005, the court granted appellant's section 1538.5 motion as to the burglary case.

On September 16, 2005, appellant was sentenced on the razor blade case to the midterm of three years, doubled for one strike, plus two years for two prior convictions. At the People's request, the court dismissed the other two prior conviction allegations so that appellant could be sentenced as a second strike offender, and not a third strike offender. The court also dismissed the burglary case after the prosecutor announced that the People were unable to proceed on it because the section 1538.5 motion had been granted.

Defense counsel recommended to appellant that he not file an appeal. Even so, on November 21, 2005, appellant filed a slightly late notice of appeal. Pursuant to his application, we later ordered that the notice of appeal was to be accepted as timely.

## DISCUSSION

1. *The* Marsden *Issues*

Appellant maintains that (a) Commissioner Schuur conducted an inadequate *Marsden* inquiry, (b) his letter to the court's presiding judge should have triggered a second *Marsden* hearing, and (c) another *Marsden* hearing should have been held after he told Judge Knupp that he had been prevented from pleading NGI.

Under *Marsden*, *supra*, 2 Cal.3d 118, a criminal defendant who seeks to substitute counsel must be allowed to state the specific reasons for his dissatisfaction with counsel. Once that opportunity is given, it is within the trial court's discretion whether the circumstances justify a substitution of counsel. Substitution is required if the record clearly shows that defense counsel is not providing adequate representation or that there is such a conflict between the defendant and counsel that ineffective assistance of counsel is likely to result. The trial court's determination will not be disturbed on appeal absent a showing that denial of the motion substantially impaired the defendant's right to the effective assistance of counsel. (*People v. Barnett* (1998) 17 Cal.4th 1044, 1085 [74 Cal.Rptr.2d 121, 954 P.2d 384]; *People v. Welch* (1999) 20 Cal.4th 701, 728 [85 Cal.Rptr.2d 203, 976 P.2d 754].)

We find no abuse of discretion in any of the rulings on this issue.

When Commissioner Schuur gave appellant an opportunity to explain why he wanted another lawyer, appellant said he did not trust counsel and did not

believe that counsel was working for his best interest. Those vague reasons did not provide a basis for substituting counsel. Arguably, Commissioner Schuur should have asked for details. His failure to do so is not significant, as appellant's reasons for wanting a new attorney, and counsel's explanation, were fully developed later.

In his letter to the presiding judge and in his statements before Judge Knupp, appellant explained that he felt his counsel was not making an effort for him, was not considering the effect of his mental health issues, and was ignoring his desire to enter an NGI plea. Those reasons did not justify a substitution of counsel, because defense counsel explained that he had considered an NGI defense, personally saw no basis for it, and had his impression confirmed by the reports of the experts. Also, when asked, appellant specifically said in front of Judge Knupp that he did not want another *Marsden* hearing.

We therefore conclude that appellant is not entitled to a reversal of his conviction based on *Marsden* error.

## 2. *Refusal to Permit Appellant to Plead NGI*

Although the circumstances do not justify a reversal based on *Marsden* error, appellant's statements to the trial court reveal a different problem. He unequivocally told the trial court that he wanted to plead NGI, and his counsel would not let him. The trial court erroneously believed that "the insanity issue is a matter for defense counsel to raise." The result was that appellant's personal right to enter the plea of his choice was ignored.

██ Even though defense counsel generally has the right to control trial tactics (*People v. Bolden* (1979) 99 Cal.App.3d 375, 379 [160 Cal.Rptr. 268]), a defendant has a personal right to enter the plea he or she wants, even if counsel believes that plea is a bad tactical choice. (§ 1018; *People v. Gauze* (1975) 15 Cal.3d 709, 717–718 [125 Cal.Rptr. 773, 542 P.2d 1365]; *People v. Medina* (1990) 51 Cal.3d 870, 899–900 [274 Cal.Rptr. 849, 799 P.2d 1282]; see 4 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Pretrial Proceedings, § 262, pp. 470–472.)

Section 1018 provides, in pertinent part: "Unless otherwise provided by law, every plea shall be entered or withdrawn by the defendant himself or herself in open court. . . . This section shall be liberally construed to effect these objects and to promote justice."

██ "[T]he decision to plead guilty or not guilty ultimately lies with the defendant." (*In re Williams* (1969) 1 Cal.3d 168, 177, fn. 8 [81 Cal.Rptr. 784, 460 P.2d 984].)

In *People v. Gauze, supra,* 15 Cal.3d at pages 717–718, the defendant's appointed counsel told the court that an NGI plea and diminished capacity defense were viable options, but he was not pursuing them because he viewed his appointment as counsel as a mandate to proceed as the defendant wanted, and the defendant did not want those options. On appeal, the defendant contended that his trial counsel should have presented his strongest case, an NGI plea and diminished capacity defense. Our Supreme Court disagreed since, pursuant to section 1018, neither defense counsel nor the trial court had the power to contravene the defendant's choice of plea.

Similarly, in *People v. Medina, supra,* 51 Cal.3d at pages 899–900, the defendant's counsel informed the trial court that the defendant personally wanted to reinstate a previously withdrawn insanity plea, even though counsel disagreed with that decision. The trial court confirmed that the defendant was making a free and voluntary choice. It then accepted the change of plea, apparently believing that it had no other option. On appeal, the defendant contended that the trial court should have exercised its discretion on whether to accept the withdrawn plea. The Supreme Court rejected that argument, since "a defendant . . . cannot be compelled by counsel to abandon [an insanity defense] because counsel disagrees with the tactics of that decision." (*Id.* at p. 900.)

Pursuant to the foregoing authorities, appellant had the right to enter an NGI plea, even if his counsel thought that plea was a bad tactic.[2] Indeed, it is difficult to understand counsel's concern that the plea would mean the jury would hear that the experts thought appellant was malingering, when counsel entered into a stipulation in which that fact was included.

Respondent argues that counsel did not have to pursue an NGI plea when there was no evidence to back up such a plea, since the experts confirmed defense counsel's opinion that appellant was malingering. Respondent relies on the principle that "defense counsel was not obliged to pursue futile lines of defense simply because defendant demanded them, and his refusal to do so did not justify his removal as counsel." (*People v. Panah* (2005) 35 Cal.4th 395, 432 [25 Cal.Rptr.3d 672, 107 P.3d 790]; see also *People v. Welch, supra,* 20 Cal.4th at pp. 728–729.) However, those cases concerned decisions about trial tactics and do not relate to a defendant's personal right to enter the plea

---

[2] It is not unusual for counsel to move to be relieved when there is an irreconcilable difference between counsel and client on a matter such as an NGI plea. This may not always be practical and could result in much wasted time and effort. An alternative to counsel asking to be relieved is for counsel to request an in camera, ex parte hearing prior to the plea and make a record of the reasons why he or she is opposed to an NGI plea; the court can then proceed with the plea the defendant insists on entering. This preserves the defendant's right to control his plea. It also forestalls procedural maneuvers that delay the trial and that create specious issues for the appeal.

of his or her choice. That right is analogous to a defendant's right to elect whether or not to testify, which is not something that defense counsel can control. (See *People v. Fernandez* (1990) 219 Cal.App.3d 1379, 1387 [269 Cal.Rptr. 116].)

Significantly, the doctors' reports went to the issue of present competency to stand trial and not to appellant's sanity at the time of the crime. There is nothing in the reports about what appellant's mental condition was, or what medication he had taken, on the specific day he cut his arm with the razor. Also, the reports document a history of diagnoses of and hospitalizations for mental illness, combined with questions about whether he was using mental health issues to manipulate the justice system. Moreover, even if there were no experts to support an NGI defense, appellant's abnormal behavior at the time of the incident provided some evidence for it, since he self-inflicted a wound to his arm that was deep enough to require 18 stitches and grinned sheepishly at the sheriff's deputies when they discovered what he had done. We therefore are not convinced that the NGI defense was necessarily a "futile line of defense."

Respondent further argues that, because trial counsel believed that an NGI defense would be meritless, the trial court's refusal to allow appellant to plead NGI was necessarily harmless. We reject that argument because, as indicated, there was evidence from which the jury might have found that appellant was NGI if it had been presented with that issue.

Contrary to respondent's assertion, the situation is not "akin to forcing an attorney to put on alibi witnesses counsel did not believe were being truthful." The fact defense counsel did not personally believe the NGI plea had merit did not foreclose presentation of the available evidence that supported it, since counsel's obligation was to provide the best representation that he could under the circumstances. (See *People v. Frierson* (1985) 39 Cal.3d 803, 816–817 [218 Cal.Rptr. 73, 705 P.2d 396].)

There are "certain fundamental decisions in the course of a criminal action [for which] a counsel's control over the proceedings must give way to the defendant's wishes." (*People v. Frierson, supra,* 39 Cal.3d at p. 812.) This is one such decision. We hold that the infringement of appellant's right to enter the plea of his choice, when there was evidence to support that choice, even though his counsel disagreed with that choice, entitles him to a new trial.

## DISPOSITION

The judgment is reversed.

Cooper, P. J., and Rubin, J., concurred.