DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**WESLEY A. HOSTZCLAW,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D21-2557

[February 15, 2023]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Caroline C. Shepherd, Judge; L.T. Case No. 50-2014-CF-012744-AXXX-MB.

Carey Haughwout, Public Defender, and Gary Lee Caldwell, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Jessica L. Underwood, Assistant Attorney General, West Palm Beach, for appellee.

WARNER, J.

In this appeal from his conviction and sentence for robbery, appellant raises several issues. One requires reversal. The trial court refused to allow appellant to assert an insanity defense over the objection of his counsel. Because pleading not guilty by reason of insanity is tantamount to a plea decision, which is a fundamental right of the defendant, the court erred in disallowing the presentation of an insanity defense, where some evidence in the record might have tended to support the plea.

## Facts

The State charged appellant with committing a robbery in December 2014 at a yogurt shop with a toy gun. At trial, defense counsel conceded that appellant committed a crime. Counsel argued, however, that the evidence showed "at most, a robbery by sudden snatching and possibly just . . . theft" because the clerk did not open the register until appellant told him that he was "homeless."

The case did not go to trial until 2021 due in large part to the actions of appellant. Originally, a public defender was appointed to represent appellant. Despite having counsel, appellant filed two motions, one of which claimed that he wished to assert an insanity defense, but his public defender refused to raise the defense.

The public defender withdrew based on a conflict of interest, and the office of regional counsel was appointed. Appellant also moved to discharge the regional counsel because counsel would not consider the insanity defense based on involuntary intoxication from lawfully prescribed medications.

The court granted appellant's request for self-representation or to retain private counsel. During this time, appellant filed a motion to assert an insanity defense, amongst a raft of other filings. In the motion to assert an insanity defense, appellant claimed he had no memory of committing the robbery. He pointed to the police report which said that when he was stopped by police for the robbery, he told them to "shoot him." He alleged that he had mental health issues dating back to his youth, he had been hospitalized in psychiatric hospitals several times, and was treated for mental illness in prison. He also stated in these pleadings that he had attempted suicide.[1] After his last release from prison, he was in a motor vehicle accident and was prescribed several medications.

Six months later, the court appointed standby counsel to assist appellant. Appellant continued filing motions, including an amended motion to assert an insanity defense, and seeking to depose various public defenders. In October of 2016 alone, appellant filed twelve motions and one petition, including a motion to disqualify the judge, which was denied. Eventually, the trial court struck or denied most of appellant's motions. It did not strike his motion to assert an insanity defense.

Later, appellant was arrested and in custody in Broward County on other charges. He remained there until he was acquitted in a trial. His standby counsel in this case moved to withdraw, and substitute standby counsel was appointed. After a *Faretta*[2] hearing, the court found appellant competent to represent himself.

In September of 2019, the State moved for a determination of appellant's competency, because a theme in the numerous motions filed by appellant was "a vast conspiracy to include a threat on his life by

---

[1] The competency evaluation history showed multiple suicide attempts.
[2] *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975).

numerous governmental agencies." The State also based its motion on the legal nature of appellant's motions, his refusal to communicate with standby counsel, and concern that appellant failed to appreciate the nature of the charges and was unable to assist in his own defense. A hearing was held, and appellant's case was transferred to the mental health division. His motion to dismiss his standby counsel was denied.

At a subsequent hearing, standby counsel was allowed to withdraw on her own motion, and new standby counsel was appointed. Counsel was appointed as full counsel by order November 4, 2019, as appellant had requested appointment of full counsel in several pro se motions.

Despite the appointment of his new attorney, appellant filed a plethora of pro se motions which were labeled by the clerk either as "correspondence" or as motions in December of 2019. Appellant continued to file motions requesting assertion of an insanity defense and sought to have a psychiatric evaluation to support that defense.

In February 2020, the court permitted counsel to withdraw and appointed attorney Noble to represent appellant.

At a hearing in March of 2020, the court considered the expert's report regarding appellant's competency to stand trial. Based upon the evaluation, the court found appellant to be competent. The court also denied appellant's motion to discharge his counsel. Nevertheless, appellant continued to file multiple motions, including ones demanding to assert an insanity defense and arguing that his counsel was ineffective.

The court held a hearing in June 2020 on appellant's claim that his counsel was ineffective. Appellant contended that counsel had not visited him in jail and was not representing his interests. No mention was made of appellant's specific desire to use the insanity defense. During this telephone hearing, the court had to place appellant's line on hold multiple times when it appeared that appellant was not answering the court's questions.

The court found that the grounds which appellant raised did not entitle him to a *Nelson*[3] hearing. The court twice began a *Faretta* hearing, but stopped when appellant stated that he did not want to represent himself. At that point, the court concluded the *Faretta* hearing because appellant was not making an unequivocal request to represent himself.

---

[3] *Nelson v. State*, 274 So. 2d 256 (Fla. 4th DCA 1973).

3

Reviewing the file, the court noted appellant had filed seven pro se motions to dismiss attorneys and four attorneys had moved to withdraw. Appellant also had filed three pro se motions to recuse judges and five pro se motions for enlargement of time. The court stated appellant had filed 157 more pro se pleadings while he was represented and over fifty since January 2020. The court concluded that to allow appellant to proceed pro se would be "an absolute destruction of the administration of justice[.]"

The court determined that Attorney Noble would continue to represent appellant. The court explained that appellant did not state sufficient grounds for a *Nelson* hearing based on ineffective assistance by claiming that his lawyer did not represent "my interest."

After this hearing, appellant continued to file pro se motions which the court then struck. The court finally prohibited appellant from further pro se filings.

On April 22, 2021, the case was finally called for jury trial. At the commencement of the trial, appellant again sought to discharge his attorney and sought to represent himself so that he could assert an insanity defense based upon involuntary intoxication as a result of taking prescribed medications. The court again denied his request to represent himself, based on appellant's conduct throughout the litigation, including the multiple pro se filings when the court had prohibited pro se filings (117 in the last year and a half) as well as appellant's inability to conduct himself properly in zoom hearings.

The court asked for attorney Noble to respond, and he told the court that with respect to the insanity defense, no mental health experts would testify to appellant's insanity at the time of the offense. And if appellant was relying on his psychiatric medications, Noble concluded that it would only show diminished capacity, which was not a defense under Florida law. Appellant disagreed, stating that involuntary intoxication could also be asserted.

The trial then commenced. After a short presentation of evidence from the robbery victim, the court asked appellant whether he wished to testify. However, the court cautioned him that he could not testify on his claim of insanity, because that was not before the court. Given this limitation, defendant declined to testify.

The jury found appellant guilty of unarmed robbery as charged. The court adjudicated the defendant guilty and sentenced him to a fifteen-year Prison Releasee Re-offender (PRR) sentence. This appeal follows.

**Refusal to Allow Assertion of Insanity Defense**

In *Puglisi v. State*, 112 So. 3d 1196 (Fla. 2013), our Supreme Court explained that a defendant retains a fundamental right to determine certain overarching decisions in a criminal case but not the day-to-day trial tactics. The court quoted *Florida v. Nixon*, 543 U.S. 175, 187 (2004) for its analysis of which decisions a defendant has the authority to make, and which should be left to the attorney:

> An attorney undoubtedly has a duty to consult with the client regarding "important decisions," including questions of overarching defense strategy. *Strickland* [*v. Washington*], 466 U.S. [668,] 688 [104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)] . . . . **certain decisions regarding the exercise or waiver of basic trial rights are of such moment that they cannot be made for the defendant by a surrogate. A defendant, this Court affirmed, has "the ultimate authority" to determine "whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal."** *Jones v. Barnes*, 463 U.S. 745, 751 [103 S. Ct. 3308, 77 L. Ed. 2d 987] (1983); *Wainwright* [ ], 433 U.S. [at] 93, n.1 [97 S. Ct. 2497] (Burger, C.J., concurring). **Concerning those decisions, an attorney must both consult with the defendant and obtain consent to the recommended course of action**.

*Puglisi*, 112 So. 3d at 1205 (alterations in original) (emphasis added) (footnote omitted). The decisions referred to in *Nixon* were distinguished from "the day-to-day conduct of the defense." *Id.* at 1206 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 93 (1977) (Burger, C.J., concurring)).

The question presented in this case is whether the assertion of an insanity defense is a decision for which the ultimate authority to assert or not to assert the defense is the defendant's right to make.

In *Edwards v State*, 88 So. 3d 368, 375 (Fla. 5th DCA 2012), the court held that a defendant had the right to refuse to assert an insanity defense, and the trial court erred in allowing defense counsel to present the defense to the jury over the defendant's objection. The court considered whether the decision by defense counsel to present an insanity defense to the crime was a "strategic decision[] that may be made by defense counsel regardless of any competency determination or whether [the decision] implicate[s] fundamental rights and, thus, must be left ultimately to the defendant." *Id.* at 373. The court relied on the reasoning in *Cook v. State*, 977 A.2d

803 (Del. 2009), and the Florida Rules of Professional Conduct to conclude that the defendant retains the ultimate authority to determine whether to assert the defense:

> [A]n attorney undertaking the representation of [a] client has a responsibility to abide by [the] client's decisions concerning the objectives of the representation. In a criminal case, the client has the ultimate right to decide whether or not to enter a plea, waive a jury trial, or testify. R. Regulating Fla. Bar 4–1.2(a) . . . . Further, **while insanity is an affirmative defense in Florida, the decision to raise the defense is akin to a plea decision**. *See State v. Tribble*, 179 Vt. 235, 892 A.2d 232, 248 (2005) (noting "that Vermont's procedure for raising an insanity defense is equivalent to a plea of not guilty by reason of insanity"). As such, the decision rests with the defendant alone. *See Cooke*, 977 A.2d at 842–43 (recognizing that the plea decision is the sort of fundamental decision that must be left to the defendant and asserting the defense of "guilty but mentally ill" over the defendant's objection effectively negated his choice).

*Edwards*, 88 So. 3d at 374–75. Similarly, in *McMunn v. State*, 264 So. 2d 868 (Fla. 1st DCA 1972), the court noted, "[t]he defense of insanity is as fundamental a right on the part of a defendant as is a plea of not guilty." *Id.* at 870.

As appellant recognizes, this case provides the opposite scenario of *Cooke* and *Edwards*, because here the appellant sought to assert an insanity defense which was prevented by his lawyer and the court. Nevertheless, as appellant was deprived of his constitutional right to make a fundamental decision regarding his case, just as in *Edwards,* he is entitled to relief.

*People v. Clemons*, 74 Cal. Rptr. 3d 248 (Cal. Ct. App. 2008), is instructive. There, even though the defendant expressly told the court that he wanted to plead not guilty by reason of insanity, his attorney objected because he concluded no evidence supported that defense. *Id.* at 252–53. The trial court refused to allow the defendant to proceed on an insanity defense, believing that the assertion of the defense was a matter for defense counsel to raise. *Id.* at 254. The appellate court concluded that appellant had a fundamental right to so plead, even if his counsel disagreed. *Id.* at 256. Responding to the State's argument that defense counsel would not have to pursue the insanity defense if no evidence supported it, the court concluded that "[t]he fact defense counsel did not

personally believe the [not guilty by reason of insanity] NGI plea had merit did not foreclose presentation of the available evidence that supported it, since counsel's obligation was to provide the best representation that he could under the circumstances." *Id.*

Counsel in *Clemons* did not believe that defendant was insane because of competency evaluations which showed him to be malingering. Noting the limits of those exams, the court reviewed the record and found evidence to support an NGI plea:

> Significantly, the doctors' reports went to the issue of present competency to stand trial and not to appellant's sanity at the time of the crime. There is nothing in the reports about what appellant's mental condition was, or what medication he had taken, on the specific day he cut his arm with the razor. Also, the reports document a history of diagnoses of and hospitalizations for mental illness, combined with questions about whether he was using mental health issues to manipulate the justice system. Moreover, even if there were no experts to support an NGI defense, appellant's abnormal behavior at the time of the incident provided some evidence for it, since he self-inflicted a wound to his arm that was deep enough to require 18 stitches and grinned sheepishly at the sheriff's deputies when they discovered what he had done. We therefore are not convinced that the NGI defense was necessarily a "futile line of defense."

*Id.* at 255–56. Therefore, the court held:

> There are "certain fundamental decisions in the course of a criminal action [for which] a counsel's control over the proceedings must give way to the defendant's wishes." [citations omitted] This is one such decision. We hold that the infringement of appellant's right to enter the plea of his choice, when there was evidence to support that choice, even though his counsel disagreed with that choice, entitles him to a new trial.

*Id.* at 256; *see also State v. Tenace*, 700 N.E. 2d 899 (Ohio Ct. App 6th Dist. 1997).

This case is similar to *Clemons*. Appellant expressly stated in multiple motions and hearings that he wanted to assert the insanity defense, i.e., not guilty by reason of insanity. Because of his attorney's objection, the

trial court refused to allow it. While his attorney stated that no evidence supported the defense, the record is not so clear.

Like the defendant in *Clemons*, appellant was examined multiple times for competency to stand trial but never for insanity at the time of the commission of the offense. In his first psychological evaluation, conducted just three days after the offense, the evaluator stated, "[c]urrently he is exhibiting multiple potential signs of a mental disorder that could be related to severe situational stressors, chronic substance abuse, a severe personality disorder, general medical conditions, or psychiatric disorder." Both in his motions and in the competency evaluation history, he reported mental health issues commencing as a child. He was hospitalized at least twice in psychiatric facilities. While in prison, he was treated for mental health issues. He has attempted suicide multiple times. After his release from prison, before the robbery, appellant alleged that he was involved in an accident for which he was prescribed several medications, that he claimed affected his memory. He claims not to remember committing the offense at all. Finally, the probable cause affidavit states that when approached by police, he called on them to shoot him. Just as in *Clemons*, the error in refusing to allow appellant to present an insanity or involuntary intoxication claim was not harmless, because the record presents evidence from which a jury might conclude that his insanity defense was meritorious.

We briefly address appellant's claim that the court abused its discretion in denying his right of self-representation. In a thorough order, the court explained the basis of its order denying appellant the right to self-representation. The court detailed how the appellant abused the court system with a multitude of pro se filings and how appellant was unable to act appropriately during court proceedings. Appellant had continually exhibited disruptive behavior and refused to abide by court orders, as is apparent from our recitation of the procedural history of this case.

"The right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law." *Faretta*, 422 U.S. at 834 n.46. Where a defendant has shown an inability to abide by the rules of procedure and courtroom protocol, the court may deny self-representation. *See Thomas v. State*, 867 So. 2d 1235 (Fla. 5th DCA 2004).

## Conclusion

Because the insanity defense is akin to a plea, a defendant retains the ultimate authority in the decision to assert the defense. Thus, the trial

8

court erred by refusing to allow appellant to assert the defense.[4]  We do not address the other issues raised as those issues are not necessary to be resolved given our determination that the entire trial and sentencing must be reversed.

We thus reverse and remand for further proceedings.

KLINGENSMITH, C.J., and GERBER, J., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***

---

[4] It does not appear that any of appellant's counsel conducted any discovery on insanity or involuntary intoxication, even though appellant continually requested appointment of an expert to evaluate the claim.  On remand, the court may consider whether additional discovery is necessary.

9