Filed 5/1/23 P. v. Lemus CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE, | C095845 |
| Plaintiff and Respondent, | (Super. Ct. No. 21CF02705) |
| v. | |
| RAUL RUIZ LEMUS, | |
| Defendant and Appellant. | |

A jury found defendant Raul Ruiz Lemus guilty of charges of (1) fleeing a peace officer's motor vehicle and driving against traffic (Veh. Code, § 2800.4) and (2) assault with a deadly weapon on a peace officer (Pen. Code, § 245, subd. (c); undesignated statutory references are to the Penal Code). After a prior serious felony conviction was found to be true, defendant was sentenced to 11 years 4 months in state prison. On appeal, defendant contends his Sixth Amendment rights were violated when defense counsel refused defendant's request to enter a plea of not guilty by reason of insanity (NGI). Defendant further contends the trial court erred in denying his two *Marsden*

1

motions (*People v. Marsden* (1970) 2 Cal.3d 118) and that cumulative errors denied his due process right to a fair trial. We reject these claims and affirm the judgment.

## FACTS AND HISTORY OF THE PROCEEDINGS

On the evening of May 18, 2021, a sergeant with the Butte County Sheriff's Office responded to a call about a suspicious vehicle in a trailer park. He parked his patrol car with the lights off by the entrance and waited for backup. While waiting, the sergeant saw a vehicle driven by defendant matching the description of the suspicious vehicle speed out of the park. As the vehicle turned, its rear tires spun and smoked, and the back end swung into the oncoming lane. The sergeant turned on his headlights and followed five to six vehicle lengths behind, so that the driver of the vehicle would not identify him as a police officer. The sergeant radioed the vehicle's position.

The sergeant saw the vehicle go around a car and through a four-way stop without stopping and then turn. He followed and saw the vehicle make another turn, crossing into the oncoming lane in the process. The vehicle then pulled over to the right and slowed down. The sergeant activated the patrol car's flashing lights to make a traffic stop, but the vehicle veered back onto the road and took off.

When the vehicle made another turn, the sergeant activated his siren. The vehicle slowed down but then speeded up again. The sergeant continued his pursuit of the vehicle as it made additional turns, and then saw another patrol car coming in the opposite direction with its lights and siren activated. Defendant's vehicle went into the opposite lane and drove towards the patrol car, causing it to swerve off the road to avoid a collision. The patrol car turned and joined the pursuit. A third patrol car had also joined, taking the lead. The vehicle made another turn without stopping at a stop sign and again moved into the wrong lane, forcing another car off the road.

During the pursuit, the sergeant noticed that the vehicle was missing its doors and that a male passenger was in the front seat. The sergeant identified defendant as the

2

driver. Ultimately, the vehicle's engine caught fire. The passenger jumped out of the moving vehicle and fled. The vehicle continued on fire down the road while defendant hung out the side, attempting to pour liquid on the fire to put it out. When the engine finally died, defendant was apprehended by officers.

## DISCUSSION

## I

### *Plea of Not Guilty by Reason of Insanity*

#### A.    Additional Factual Background

At the end of the hearing on defendant's second *Marsden* motion, defendant complained: "He [(defense counsel)] didn't even want to put my plea in. I said the reason – because I don't remember none of it. I mean, I remember some of it, but I don't remember most of it, because I don't – I don't remember most of it." Defendant continued: "I told him, Plead temporary insanity. He said, Oh, no, no, no. Said I was crazy, you know. Like, I don't need him representing me if he's not going to do what I ask him to do, you know." Earlier in the hearing, defendant said: "I don't even know who was in my car. I barely remember what happened."

At defendant's first *Marsden* hearing, he also said: "And apparently the officer that arrested me said I was screaming and yelling that I was Satan."

#### B.    Legal Background

" 'A plea of not guilty by reason of insanity refers to the defendant's mental state at the time of the commission of the crime, a mental state which is distinguishable from that which is required of a defendant before he may be allowed to stand trial.' [Citation.] 'Insanity, under California law, means that at the time the offense was committed, the defendant was incapable of knowing or understanding the nature of his act or of

3

distinguishing right from wrong.' " (*People v. Henning* (2009) 178 Cal.App.4th 388, 396 (*Henning*).)

Under California law, every plea must be entered personally by the defendant in open court. (§ 1018.) In general, defense counsel controls tactical decisions. (*Henning*, *supra*, 178 Cal.App.4th at p. 397.) A defendant, however, has a personal right to enter any plea he or she wants, even if defense counsel believes the plea is a poor tactical choice. (*People v. Clark* (2011) 52 Cal.4th 856, 893 (*Clark*); *Henning*, at p. 397; *People v. Clemons* (2008) 160 Cal.App.4th 1243, 1251 (*Clemons*).) A competent defendant who makes an unequivocal request to enter an NGI plea has a statutory right to do so. (§ 1018; *People v. Weaver* (2001) 26 Cal.4th 876, 963; *People v. Gauze* (1975) 15 Cal.3d 709, 717; *Henning*, at pp. 397-398.) "[A] defendant . . . cannot be compelled by counsel to abandon [an insanity defense] merely because counsel disagrees with the tactics of that decision." (*People v. Medina* (1990) 51 Cal.3d 870, 900.)

We note that on June 9, 2021, defense counsel expressed doubt about defendant's mental competence. Counsel asked the court to order a section 1368 evaluation. The court ordered the evaluation and suspended criminal proceedings. At a September 8, 2021, hearing, the court adopted the findings of the report of the psychologist appointed to conduct the evaluation and found defendant mentally competent to stand trial.

C.     Analysis

On this record, it is not clear that defendant made an unequivocal request to defense counsel to enter an NGI plea. Defendant made the statements quoted above at the end of a hearing that runs to 13 pages of reporter's transcript. At the first and second *Marsden* hearings, defendant voiced essentially the same complaints about defense counsel's tactics—which we discuss in the next section—before abruptly bringing up his desire to enter an NGI plea at the end of the second hearing.

This record is in contrast to that in *Henning*, where this court concluded that the defendant "unequivocally requested to enter an NGI plea" during two *Marsden* hearings. (*Henning*, *supra,* 178 Cal.App.4th at p. 397.) In *Henning*, the court granted the defendant's first *Marsden* motion where one of the grounds was "his dissatisfaction with defense counsel's refusal to allow him to enter an NGI plea." (*Id.* at pp. 394-395.) At a second *Marsden* hearing, the defendant stated that counsel " 'does not want to go along with my plea,' " and answered in the affirmative to the court's question, " 'is it your position that you were insane at the time of the incident?' " (*Id.* at p. 395.)

Even assuming that defendant unequivocally requested to enter an NGI plea, we must assess whether prejudicial error resulted from defendant's counsel's refusal to do so. (*Henning*, *supra*, 178 Cal.App.4th at p. 398.) "Errors of state statutory law are analyzed pursuant to our Supreme Court's decision in *People v. Watson* (1956) 46 Cal.2d 818. [Citation.] Under *Watson*, an error warrants reversal only if it 'is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' " (*Henning*, *supra*, 178 Cal.App.4th at p. 398, quoting *Watson*, at p. 836.)

Defendant disagrees that a showing of prejudicial error is required. Relying on *McCoy v. Louisiana* (2018) ___ U.S. ___ [200 L.Ed.2d 821] (*McCoy*), defendant contends that failure to enter an NGI plea is not subject to harmless error analysis. In *McCoy,* the United States Supreme Court held that the defendant's Sixth Amendment right to assistance of counsel was violated when, during the guilt phase of a capital trial, defense counsel conceded that defendant committed three murders in order to afford the defendant the best chance to avoid a death sentence. (*Id.* at p. ___ [200 L.Ed.2d at p. 827].) The defendant expressly told his counsel not to make that concession. (*Ibid.*) The United States Supreme Court said: "When a client expressly asserts that the objective of '*his* defence' is to maintain innocence of the charged criminal acts, his lawyer must abide by that objective and may not override it by conceding guilt." (*Id.* at

5

p. ___ [200 L.Ed.2d at p. 831].)  The court further held:  "Violation of a defendant's Sixth Amendment-secured autonomy ranks as error of the kind our decisions have called 'structural'; when present, such an error is not subject to harmless-error review."  (*Id.* at p. ___ [200 L.Ed.2d at p. 833].)

Defendant would extend *McCoy* to defense counsel's refusal to enter an NGI plea.  Based on *McCoy,* defendant insists that the judgment must be reversed and the case remanded for a new trial without any need to show prejudice.

Defendant does not cite any California cases applying *McCoy* to defense counsel's refusal to enter an NGI plea, and we are not aware of any.  In *McCoy*, the court said, "Some decisions . . . are reserved for the client—notably, whether to plead guilty, waive the right to a jury trial, testify in one's own behalf, and forgo an appeal.  [Citation.]  [¶] Autonomy to decide that the objective of the defense is to assert innocence belongs in this latter category."  (*McCoy*, *supra*, ___ U.S. at p. ___ [200 L.Ed.2d at p. 830].)  Accordingly, California case law has applied *McCoy* to circumstances where the defendant desires to maintain his or her innocence and is overridden by defense counsel.  For example, in *People v. Eddy* (2019) 33 Cal.App.5th 472, this court held that the Sixth Amendment right recognized in *McCoy* applies where the record shows "(1) that defendant's plain objective is to maintain his innocence and pursue an acquittal, and (2) that trial counsel disregards that objective and overrides his client by conceding guilt."  (*Id.* at p. 482; see also *People v. Flores* (2019) 34 Cal.App.5th 270, 282 [*McCoy* applies where the defendant expressed his objective to maintain innocence].)

Defendant also relies on the Ninth Circuit's opinion in *United States v. Read* (9th Cir. 2019) 918 F.3d 712.  We acknowledge that decisions of lower federal courts, while not binding, are persuasive and entitled to great weight, especially where they bear a marked factual similarity to the case before us.  (*Tichinin v. City of Morgan Hill* (2009) 177 Cal.App.4th 1049, 1064, fn. 7.)  But that is not the situation here.  In *Read*, the Ninth Circuit applied *McCoy* when defense counsel presented an insanity defense over

6

defendant's clear rejection of the defense. (*Read*, at p. 719.) In doing so, the court emphasized that: "An insanity defense is tantamount to a concession of guilt." (*Id.* at p. 720.)

Accordingly, we do not extend the claim of structural error under *McCoy* outside of the context of defense counsel's disregard of a defendant's objective to maintain his or her innocence. Because we reject the claim of structural error and because defendant failed to demonstrate or even argue that he was deprived of a fair trial or otherwise suffered prejudice as result of the claimed error, he is not entitled to relief on appeal. (*People v. Stewart* (2004) 33 Cal.4th 425, 462-463; *People v. Ramirez* (2022) 13 Cal.5th 997, 1032 [on appeal, the defendant must show error and prejudice].) In any event, if defendant had claimed prejudicial error, we would reject it.

In *Henning*, we held that a trial court's erroneous denial of the right to plead NGI "does not warrant reversal if an insanity defense is baseless." (*Henning*, *supra*, 178 Cal.App.4th at p. 400.) We declined to reverse the judgment, because "the record affirmatively demonstrates the lack of credible basis for an insanity defense." (*Id.* at p. 401.) We noted, inter alia, that the record contained no evidence of mental defect or condition that rendered the defendant incapable of appreciating that his acts were wrongful. (*Id.* at p. 401.) Further, the circumstances of the defendant's offenses and flight indicated that he understood the wrongful nature of his acts. (*Ibid.*) He wore a ski mask to avoid recognition and gloves to avoid leaving fingerprints. (*Ibid.*) He put duct tape over his license plate. (*Ibid.*) He attempted to conceal the shotgun in his backpack while trying to evade police. (*Ibid.*)

We distinguished *Clemons*, *supra*, 160 Cal.App.4th 1243 where the court concluded insanity was not a " ' "futile line of defense" ' " and reversed the judgment. (*Henning*, *supra*, 178 Cal.App.4th at p. 402, quoting *Clemons*, at p. 1253.) The defendant in *Clemons* "had a history of diagnoses of and hospitalizations for mental illness." (*Henning*, at p. 402.) The crime in *Clemons,* "possessing an illegal razor blade

7

in prison . . . was discovered due to a 'self-inflicted . . . wound to his arm that was deep enough to require 18 stitches and [he] grinned sheepishly at the sheriff's deputies when they discovered what he had done.' " (*Henning*, at p. 402, quoting *Clemons*, at p. 1253.)

Our review indicates that the record lacks evidentiary support for a claim that, at the time of vehicle pursuit, defendant was unable to understand that the nature of his acts or to distinguish right from wrong. To be sure, defendant self-reported some mental health diagnoses, but he had no documented history of diagnosis and hospitalization and was not taking medication. In addition, defendant remembered the details of the poor condition of the vehicle he was driving (i.e., no doors, no hood, etc.), which he correctly identified as the reason for the pursuit by law enforcement. Although defendant claimed he could not recall much of the events, when asked by a probation officer if his mental health conditions contributed to the crime, defendant said, " 'I have no idea. I just remember being angry about being harassed by law enforcement.' " When the vehicle caught fire, he tried to put the fire out. Most significantly, defendant had a history of traffic stops, including three in 2020-2021, and a 2019 felony conviction for fleeing law enforcement.

Given this record, it was not reasonably probable that defendant would have had a different result at trial had he entered an NGI plea. Therefore, we will not reverse his conviction on that basis.

II

*Marsden Motions*

Defendant also contends the trial court abused its discretion in denying his *Marsden* motions. According to defendant, he and defense counsel were embroiled in an irreconcilable conflict such that ineffective representation was likely to result.

8

A.  Additional <u>Factual</u> <u>Background</u>

Questioned by the trial court at each hearing about the specific reasons why he believed defense counsel had not properly represented him, defendant articulated largely overlapping complaints, which we summarize. Defendant complained that his counsel (1) misrepresented the nature of the flashing lights on a patrol car, which defendant said had to be solidly facing forward for a felony charge; (2) showed defendant only one video clip of the pursuit when there should be many based on the number of officers involved; (3) walked out of the interview room while defendant was watching the video, which led to defendant's outburst that prompted counsel to ask for a section 1368 evaluation; (4) referred to the pursuit as a "horrible high-speed chase" when the patrol car speedometer shown on the video only went up to 50 miles per hour and defendant's vehicle was in poor condition after sitting for 10 years; (5) did not ask defendant what happened but assumed he was guilty; (6) did not address defendant's desire to admit the charge of violating postrelease community supervision (PRCS); (7) refused to talk to defendant after their confrontation over viewing the police video; (8) knew that the officers were lying about what happened during the pursuit and the arrest; and (9) had made defendant agree to a plea in a previous case.

Invited by the trial court to respond to these complaints, defense counsel at the first *Marsden* hearing described reviewing discovery and meeting with defendant to go over it, including reviewing the video. Counsel was fast-forwarding to the most relevant parts, but defendant wanted to watch the entire video. Counsel declined to watch the video again and left the room to make telephone calls. When he returned, defendant lost his temper and slapped the glass of the interview room, which prompted defense counsel to ask for a section 1368 evaluation. Defense counsel denied stating that defendant had a "terrible case."

9

At the second *Marsden* hearing, defense counsel acknowledged that he had not met with defendant since his outburst. Counsel explained that defendant improbably believed that all the sheriff's patrol cars in Butte County do not have forward-facing red lights, therefore he could not be guilty of a felony. When at their first meeting, counsel said that patrol cars have red lights facing everywhere, defendant lost his temper. Defense counsel also said that he did talk with defendant about the facts of the case; defendant explained that he is a mechanic and repairs cars, and that was why the car did not have doors or a hood.

When the trial court inquired specifically about defendant's claim that defense counsel had not addressed defendant's PRCS violation, counsel explained the delay was due to the section 1368 evaluation. Counsel further noted that: "[Defendant] wants to admit his violation, and do the violation so he can bail out. And I explained to him if he admits the violation that could probably, and most likely, be used against him when we got to trial, because he refuses to plead guilty. So when we go to trial, not only is the evading on a video, but now the People will have his admission that he did it." Defendant responded that he only wanted to admit "there was a person in there holding me at gunpoint," which the trial court pointed out did not constitute a valid admission of the PRCS violation.

The trial court denied both of defendant's *Marsden* motions, finding that defense counsel had properly represented defendant and the relationship had not deteriorated to the point that counsel would be unable to continue to represent defendant.

B. Legal Background

"A defendant is entitled to have appointed counsel discharged upon a showing that counsel is not providing adequate representation or that counsel and defendant have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result." (*People v. Jones* (2003) 29 Cal.4th 1229, 1244-1245 (*Jones*).) "We

10

review a trial court's decision declining to relieve appointed counsel under the deferential abuse of discretion standard." (*Id*. at p. 1245.) Denial of a *Marsden* motion is " ' "not an abuse of discretion unless the defendant has shown that a failure to replace the appointed attorney would 'substantially impair' the defendant's right to assistance of counsel." ' " (*People v. Valdez* (2004) 32 Cal.4th 73, 95.)

" 'Tactical disagreements between the defendant and his attorney do not by themselves constitute an "irreconcilable conflict." ' " (*People v. Valdez, supra*, 32 Cal.4th at p. 95.) Nor does a defendant's "claimed lack of trust in, or inability to get along with, an appointed attorney" compel, without more, the discharge of appointed counsel. (*People v. Crandell* (1988) 46 Cal.3d 833, 860 (*Crandell*), abrogated on another ground in *People v. Crayton* (2002) 28 Cal.4th 346, 364-365.) "If a defendant's claimed lack of trust in, or inability to get along with, an appointed attorney were sufficient to compel appointment of substitute counsel, defendants effectively would have a veto power over any appointment, and by a process of elimination could obtain appointment of their preferred attorneys, which is certainly not the law." (*Jones, supra*, 29 Cal.4th at p. 1246.)

## C.     Analysis

We conclude defendant has failed to demonstrate an irreconcilable conflict. The statements by both defendant and defense counsel at both hearings indicated that their disputes principally concerned tactical decisions about evidence, which would not constitute irreconcilable differences. (See *People v. Alfaro* (2007) 41 Cal.4th 1277, 1302; *People v. Myles* (2012) 53 Cal.4th 1181, 1207; *People v. Dickey* (2005) 35 Cal.4th 884, 922; *People v. Welch* (1999) 20 Cal.4th 701, 728-729.) For instance, defense counsel believed the officer's bodycam video was significant evidence of defendant evading officers. Defendant disagreed based on the speed shown on the speedometer in the video and the poor condition of the vehicle. Defendant maintained that the red lights on the

patrol cars involved in the pursuit were not structured as required (i.e., what he called "solid forward facing lights") to establish a felony violation. Defense counsel found this improbable. Moreover, as the trial court noted, to the extent there were conflicts between the statements of defendant and defense counsel, the court was entitled to accept counsel's explanation. (*Jones*, *supra*, 29 Cal.4th at p. 1245.)

Defendant argues that the trial court ignored the "obvious conflict" over defendant's right to plead NGI. In *People v. Loya* (2016) 1 Cal.App.5th 932, the court held: "A trial court should substitute new counsel upon learning in a *Marsden* hearing that defense counsel refuses to allow a defendant to exercise his or her right to enter an NGI plea." (*Id.* at p. 945, citing *Henning*, *supra*, 178 Cal.App.4th at p. 404.) The court in *Loya*, however, held that denial of a *Marsden* motion is harmless beyond a reasonable doubt where, as here, the defendant's behavior established that he was capable of distinguishing right from wrong and knew or understood the nature of his actions. (*Loya*, at pp. 945-946.)

Next, defendant claims his relationship with defense counsel had broken down and created an irreconcilable conflict when counsel expressed doubt about defendant's competence. However, it was defendant's own outburst that prompted defense counsel to ask for a section 1368 evaluation. Thus, defendant created any conflict that defendant now claims required substitution of counsel. " '[A] defendant may not force the substitution of counsel by his own conduct that manufactures a conflict.' " (*People v. Taylor* (2010) 48 Cal.4th 574, 599-600, quoting *People v. Smith* (1993) 6 Cal.4th 684, 696.) In addition, after defendant's first *Marsden* motion was denied, defendant told the psychologist performing the section 1368 evaluation that defendant was able to work with defense counsel.

Lastly, defendant contends that defense counsel failed to communicate with him after his initial outburst. Any impediment in their communications, however, stemmed from defendant's furious reaction to being contradicted by his attorney. As counsel

12

explained at the second *Marsden* hearing, "when I try to tell him anything different, that's when he went ballistic and wouldn't have any type of rational conversation with me." As courts have explained, "[a] trial court is not required to conclude that an irreconcilable conflict exists if the defendant has not made a sustained good faith effort to work out any disagreements with counsel and has not given counsel a fair opportunity to demonstrate trustworthiness." (*Crandell*, *supra*, 46 Cal.3d at p. 860, italics omitted; see also *Clark*, *supra*, 52 Cal.4th at p. 918 [defendant cannot refuse to cooperate with counsel and demand substitution]; *People v. Lindsey* (1978) 84 Cal.App.3d 851, 860 [a breakdown caused by defendant's intransigence and failure to cooperate is insufficient to support substitution of appointed counsel].)

We conclude that the trial court did not abuse its discretion in denying defendant's *Marsden* motions.

III

*Cumulative Error*

Defendant's ultimate claim is that the cumulative prejudicial effect of multiple errors requires reversal of his conviction, even if individual errors were harmless. As mentioned, even to the extent there could be any error regarding defendant's desire to enter an NGI plea, that error was harmless. Therefore, there was no cumulative error. (*People v. Tuggles* (2009) 179 Cal.App.4th 339, 388; *People v. Letner and Tobin* (2010) 50 Cal.4th 99, 209.)

## DISPOSITION

The judgment is affirmed.

_____
HULL, Acting P. J.

We concur:

_____
EARL, J.

_____
BOULWARE EURIE, J.

14